427 P.2d 662

Clyde HALL and Arthur Ortiz & Son, a co-partnership consisting of Arthur Ortiz, Sr. and Arthur Ortiz, Jr., Plaintiffs-Appellees,

v.

Paul TEAL and Lorene Teal, Defendants-Appellants.

No. 7959.

Supreme Court of New Mexico.

May 15, 1967.

Benjamin M. Sherman, Deming, for appellees.

## OPINION

HENSLEY, JR., Chief Judge, Court of Appeals.

The plaintiff, Clyde Hall, sought to recover a money judgment from the defendants, Paul Teal and Lorene Teal. The plaintiffs, Arthur Ortiz, Sr. and Arthur Ortiz, Jr., as creditors of Clyde Hall, were joined as co-plaintiffs in the second amended complaint by reason of an assignment executed by Hall of all proceeds of any monies recovered from the defendants.

The controversy stems from the lease of an irrigated farm owned by the defendants. The plaintiff, Clyde Hall, in his second amended complaint, sought as tenant-lessee to recover a money judgment for sums expended in behalf of the defendants Teal for repairs to irrigation wells, land leveling, purchase of cotton stripper, dusting and fertilizing. The plaintiff further sought to recover for losses sustained in attempting to produce a barley crop. The total sum claimed by the plaintiff was approximately $11,000.00. Joined as co-plaintiffs were Arthur Ortiz, Sr. and Arthur Ortiz, Jr., a co-partnership. The plaintiff, Clyde Hall, was indebted to the partnership, Arthur Ortiz and Son, in an amount in excess of $40,000.00 and subsequent to filing the original complaint in the district court had executed an assignment as follows:

**782**

"ASSIGNMENT

"Whereas the undersigned is indebted to Ortiz Cotton Co. of El Paso, Texas for certain monies which were loaned to undersigned for the production of Cotton crops from the years 1957 to date, and ·

"WHEREAS, the undersigned has a cause of action against Mr. Paul Teal which has been filed in Luna County District Court as Civil No. 5453

"NOW THEREFORE, in consideration of the above indebtedness, and the further payment by Ortiz Cotton Co. (also known as Arthur Ortiz Cotton Co.) of all attorney fees and costs incident to the prosecution of the above case to Judgment,

"I the undersigned do hereby bargain, sell and assign, all of the proceeds of any monies recovered under the above action, or any other action which I may have against Paul or Lorene Teal, to Arthur Ortiz Cotton Co.

"Dated at Deming, New Mexico, this 10th day of May, 1961.

"/s/ Clyde Hall
"Clyde Hall
"/s/ Ben Sherman
"Witness"

The defendants filed their answer and counter-claim. The answer presented the defenses of denial, statute of limitation, false representation, and negligence of the plaintiff. A further defense was that the plaintiff, Hall, had assigned all of his right, title and interest in the subject matter and thereby had no right to appear as a plaintiff. On motion filed by the plaintiffs this defense was by the trial court ordered stricken. The counter-claim of the defendants sought an accounting and a money judgment in favor of the counter-claimants.

The cause was tried to a jury and a verdict was returned in favor of the plaintiffs and against the defendants Teal in the amount of $3,974.74, and against the defendant Paul Teal only for an additional $4,200.20. Following a judgment of like tenor in favor of the plaintiffs the defendants bring this appeal.

 The first four points relied on by the appellants for reversal are attacks on the order of the court striking the defense aimed at the assignment. Specifically, the appellants say that the court erred in: 1) Striking the defense alleging that the plaintiff had assigned all of his interest in the subject matter, 2) Refusing to admit the assignment into evidence, 3) Refusing to grant the defendant's requested instruction which would permit the jury to determine the effect of the assignment, and 4) That it was error to refuse to permit the jury to pass on the question of the effect of the assignment. The appellants' position is based on the premise that the plaintiff is not the real party in interest as is required by § 21-1-17 (a), N.M.S.A. 1953. In Rea-

gan v. Dougherty, 40 N.M. 439, 62 P.2d 810, we stated:

"Tests to determine if one is 'a real party in interest' is whether he is the owner of the right sought to be enforced * * * or whether he is in a position to release and discharge the defendant from the liability upon which the action is grounded. * * *"

Later in Turner v. New Brunswick Fire Ins. Co., 45 N.M. 126, 112 P.2d 511, we were confronted with a situation similar to the case in controversy. There the plaintiff assigned to various creditors a total amount equal to the face value of his claim under a fire insurance policy. The assignments were for money due or to become due from the insurer. In the instant case, the assignment also was of monies to be recovered. The right of action was not assigned. The plaintiff Hall, continued to be the owner of the right sought to be enforced. The appellants contend that the plaintiff Hall is not the real party in interest and claim that by reason of the assignment Arthur Ortiz and Son became the real party in interest. It should be noted that Arthur Ortiz and Son were joined as co-plaintiffs in the second amended complaint. Thus, the argument of the appellant is reduced to the proposition that where there are two plaintiffs, and only one is the real party in interest, the entire action must fail. The absurdity is obvious. The trial court did not err in taking the position that the plaintiff Hall was the real party in interest. See Ralston Purina Company v. Como. Feed and Milling Company, 325 F.2d 844 (5th Circuit, 1963); Grossman v. Schlosser, 19 A.D.2d 893, 244 N.Y.S.2d 749.

The fifth point raised by the appellant is primarily aimed at the refusal of the court to instruct the jury in substance that where items are to be paid out of a fund, that is, out of the defendants' share of a crop for a given year, there can be no recovery where the crop was insufficient to create the fund. The point arose over a part of the plaintiffs' first cause of action seeking recovery for pump work and land leveling done in 1957. It was the contention of the defendants that there was no proof of any funds received by the defendants in 1957. The point will not be considered further since the transcript discloses evidence by the plaintiffs that in the year 1957 the defendants received $6,446.73 for their share of the cotton. The amounts that were claimed by the plaintiff out of this so-called fund totalled $1,166.95. The point is without merit.

The sixth and seventh points presented as grounds for reversal are related and were argued together. Under the farm lease the plaintiff Hall was obligated to finance the farm operation each year and at the close of the farm year the crops were to be divided and the cost of production

shared between the landlord and tenant. The plaintiff Hall, as tenant, required financial assistance and from time to time borrowed from the plaintiff Arthur Ortiz & Son to pay the various suppliers of seed, fertilizer, fuel, etc. The appellant now contends, that payment of accounts by Arthur Ortiz & Son was the act of a volunteer, a stranger to the contract, and operated to extinguish the debt. The defense of payment must be based on an actual delivery by a debtor or someone for him to his creditor, of money or its equivalent with the intention to extinguish the debt. Here the commodities had been supplied to the plaintiff Hall. The payment by Arthur Ortiz & Son was for the plaintiff Hall. The obligation sought to be enforced in this action was the obligation of the appellants to the plaintiff Hall. The borrowing of money by the plaintiff Hall to produce a crop can in no sense be deemed a discharge of the appellants' contractual obligation to share the cost.

The eighth proposition asserts error by the trial court in refusing to grant the defendants motion for an instructed verdict on the item of well repairs for the reason that no notice was given to the appellants for any need for such repairs. The plaintiff Hall testified on direct examination as follows:

"Q. Alright, sir. Now, Mr. Hall, was there anything else that you found concerning the well or the pump on that occasion?

"A. Well, after he cleaned the well out, he told me I had—

"MR. SANDERS: Objected to as hearsay.

"MR. SHERMAN: Alright, Now, when you say 'after he cleaned the well out' did you have the well cleaned out?

"WITNESS: Yes.

"Q. And who did the work?

"A. Mr. Johnson, here in Deming, done the jetting.

"Q. Now, Mr. Hall, before you did any work on that, did you have any conversation with Mr. Teal regarding the work that was to be done, or what was needed on this particular Well?

"A. Well, as I remember it, I either phone him or wrote him a letter, and he told me—I think he called back to the trading post out here at Lewis Flats, for me to call him. And, I went to call him— of course, I was a day or so later, and I didn't get him, and, well, as I remember, then he told me to go ahead, and in a letter, later, to have the well cleaned out.

"Q. Do you have that letter?

"A. No, I don't.

"Q. You do not?

"A. No.

"Q. At any rate, did you advise him concerning the condition that was necessary—the condition that existed in the well?

"A. Yes.

"Q. Which well was that?

"A. The north well.

"Q. Now, was this conversation before you started doing the work?

"A. Yes, a day or two.

"Q. And, then, you say you had—you hired somebody to do the work?

"A. Yes, I hired Mr. Johnson.

"Q. Alright. And does that bill represent the amount of work that he did on the well?

"A. Yes."

The trial court did not err in refusing to grant the appellants' request. Hole v. Womack, 75 N.M. 522, 407 P.2d 362.

The appellants next predicate error by the trial court in allowing the cost of plaintiff Hall's individual labor to be considered as an item of damage in connection with Exhibit 5. This exhibit was as follows:

### "AGREEMENT

"This agreement entered into this 17th day of February, 1959, by Paul Teal, party of the first part, and Clyde Hall, party of the second part:

"Witnesseth: The party of the second part hereby agrees to plant eighty (90) acres in barley upon the signing of this contract, and eighty (80) acres more in barley in October 1959, on land owned by the party of the first part and now under lease to said party of the second part. Any profit made off the barley on the above acreage to be divided one-fourth to the party of the first part and three-fourths share to the party of the second part.

"The party of the first part hereby agrees, in the event there is a loss accruing from the planting of the barley as above stated, to reimburse the party of the second part for such loss.

"IN WITNESS WHEREOF the parties hereto have signed this agreement on the day and month above stated."

"/s/ Paul Teal
"Witness" "Party of the First Part"

"/s/ Clyde Hall
"Witness" "Party of the Second Part"

The appellants contend that the trial court erred in permitting the jury to determine whether or not the plaintiff Hall was entitled to recover for his own labor under the terms of the agreement. The appellants further urge that it was unconscionable to allow the plaintiff to charge for his own labor and to permit him to share in the profits, if any. Here the appellants over-

look the fact that the purpose in planting the barley was to establish the landowners' claim to 160 acres of water rights that he would otherwise not have gained. The error, if any, has not been demonstrated to this court nor do we perceive one.

 Lastly, the appellants say that there was no competent evidence to establish the fact that the plaintiff suffered any legal damages. The force of this argument is directed to the proposition that since the accounts sued on had been paid by Arthur Ortiz & Son that the plaintiff Hall had sustained no loss. This would have raised a false issue. Further, the appellants say that the claims of the plaintiff Hall are speculative. We have reviewed the evidence and can find no error in the action of the trial court in overruling the appellants' motion for an instructed verdict on this and the other grounds heretofore mentioned. In Davis v. Campbell, 52 N.M. 272, 197 P.2d 430 we stated:

"Absolute certainty as to damages sustained is, of course, in many cases impossible; all that the law requires is that such damages be allowed as directly and naturally result from the injury. * * "

Finding no reversible error the judgment appealed from will be affirmed.

It is so ordered.

COMPTON and CARMODY, JJ., concur.