698 P.2d 5

**FIRST NATIONAL BANK OF CLOVIS, a banking corporation, Plaintiff,**

v.

**DIANE, INC., a corporation, Michael Z. Luna, Diana Luna, Ignacio Sandoval, Thomas J. Clear, Jr., and D.W. Hyder & Associates, Inc., Defendants.**

**DIANE, INC., a corporation, Michael Z. Luna, Diana Luna, and Ignacio Sandoval, Third-Party Plaintiffs,**

v.

**Ben BRONSTEIN, individually and as director of First National Bank of Clovis, Nick Kapnison, individually, Hank Harenberg, individually and as president and director of First National Bank of Clovis, and Bernard L. Robinson, individually, Third-Party Defendants.**

**Nick KAPNISON, Cross-Plaintiff-Appellee,**

v.

**Bernard ROBINSON, Cross-Defendant-Appellant.**

**No. 7805.**

Court of Appeals of New Mexico.

March 14, 1985.

William P. Gralow, Mary E. Lebeck, Civerolo, Hansen & Wolf, P.A., Albuquerque, for appellant Bernard Robinson.

Michael E. Vigil, Marchiondo & Berry, P.A., Albuquerque, for appellee Nick Kapnison.

## OPINION

BIVINS, Judge.

In his cross action plaintiff Kapnison sought and obtained a judgment against defendant Bernard Robinson, his attorney, resulting from legal malpractice. Defendant appeals, raising three issues claiming error in:

1. Finding defendant liable for legal malpractice;

2. Awarding attorney fees; and

3. Not reducing award because of a release and satisfaction between Kapnison and party to whom he was found liable.

We hold that the trial court applied a proper standard and the evidence supports a finding of legal malpractice and that plaintiff met his burden of proving it; that while attorney fees incurred by plaintiff in an ancillary action may be included as an element of damages, the case must be remanded to exclude any fees incurred in the present action as part of that award; and that defendant is entitled to no reduction based on the release given.

## 1. Background.

In the primary action, First National Bank of Clovis sued Diane, Inc. on promissory notes evidencing a loan made by the bank to that corporation. Diane, Inc. filed a third-party claim against Kapnison claiming Kapnison, who negotiated the loan on behalf of Diane, Inc., had violated NMSA 1978, Section 56–8–7 (Orig.Pamp. and Cum. Supp.1984) by charging a commission in excess of the statutory amount. The trial court granted summary judgment in favor of Diane, Inc. in the amount of $50,000, being double the amount Kapnison charged, see NMSA 1978, Section 56–8–8 (Orig.Pamp. and Cum.Supp.1984) for arranging the loan. Kapnison appealed and in July 1983, the supreme court affirmed, holding that a corporation could rely on the violation of the statute providing the maximum rate of commission for procuring loans. *Diane, Inc. v. Kapnison,* 100 N.M. 143, 667 P.2d 450 (1983).

When the trial court granted summary judgment in favor of Diane, Inc. and against Kapnison, Kapnison filed a crossclaim against his attorney, the defendant here, seeking recovery of the amounts awarded Diane, Inc. on the basis that Kapnison had sought defendant's advice before charging a brokerage fee of $25,000, and that defendant had advised Kapnison that he could legally charge the brokerage fee without violating New Mexico law.

Following a bench trial, the trial court found defendant negligent in failing to advise Kapnison of the potential liability under Sections 56–8–7 and –8, and awarded Kapnison damages in the sum of $25,000, the penalty Kapnison paid to Diane, Inc.,[1] $25,000 attorney fees, plus $1,125 tax on the fees, for a total award of $51,125.

Diane, Inc. gave Kapnison a release and satisfaction in exchange for payments totalling $45,000, plus an assignment by Kapnison to Diane, Inc. of the first proceeds from any recovery by Kapnison against defendant to the extent of the balance due

---

1. Kapnison actually owed Diane, Inc. $50,000 on its judgment, but since Kapnison retained the $25,000 commission, defendant was not re-

quired to pay but $25,000, excluding the attorney fees, to make Kapnison whole.

Diane, Inc. on its judgment, including costs and interest, against Kapnison.

## 2. Legal Malpractice.

Defendant contends that the trial court's finding, based on an affirmative duty to warn a client of potential liability, must be reversed because the "imposition of such a duty would hold a lawyer to a preposterous and incredible standard" and is without legal precedence. Further, defendant claims that even if a duty to warn is recognized, plaintiff did not meet his burden of proof by showing that defendant deviated from the standard of care of attorneys practicing in Bernalillo County. We first discuss the claimed act of malpractice and then address defendant's contentions.

### (a) Claimed acts of malpractice.

*Diane, Inc. v. Kapnison* sets forth the factual background for the "Loan Brokerage Fee Agreement" between Diane, Inc. and Kapnison whereby Kapnison agreed to arrange a loan in the amount of $165,000 for Diane, Inc. with the First National Bank of Clovis. For this service Diane, Inc. agreed to pay Kapnison a loan brokerage fee of $25,000. Kapnison sought the legal advice of defendant here as to whether he could charge that amount. Defendant said he could. Defendant claims he relied on NMSA 1978, Section 56–8–9 (Orig. Pamp. and Cum.Supp.1982) which denies to a corporation the protection of the usury laws as to maximum rates of interest that may be charged, and provides that no corporation shall have a cause of action or affirmatively plead the defense of usury.[2] Diane, Inc. is a corporation. At the time he gave Kapnison the advice, defendant reasoned that, although Section 56–8–7 prohibited a charge in excess of $3,320 for negotiating or securing the loan, Section 56–8–9(B) deprived a corporation of the protection of the brokerage fee limitation as well as damages in an amount double the prohibited rate charged. Thus, defendant believed Kapnison could charge the higher amount. Kapnison relied on defendant's advice.

### (b) Duty to warn.

The trial court found:

6. As a result of Kapnison's request for legal advice, Robinson advised Kapnison that he could legally charge such a brokerage fee and that such fee did not violate New Mexico law.

7. Robinson in so advising Kapnison failed to advise Kapnison that there were no cases interpreting Section 56–8–7 NMSA 1978 or Section 56–8–8 NMSA 1978 and that there was a potential violation of 56–8–7 NMSA 1978 and a potential liability under Section 56–8–8 NMSA 1978.

Based on these findings, the trial court concluded:

3. Robinson failed to apply the knowledge and to use the skill and care that was ordinarily used by reasonably well-qualified lawyers in this community when he failed to advise Kapnison of the potential liability under Section 56–8–7 and Section 56–8–8 NMSA 1978.

Defendant contends that the supreme court clearly found confusion and ambiguity in this area of the law when it interpreted the statutes in *Diane, Inc. v. Kapnison.* Had the court considered the issue clear on its face, according to defendant, it could have refused the appeal, issued a memorandum opinion or sanctioned the appellant for pursuing a frivolous appeal. Defendant argues that because his interpretation of the statutes was deemed incorrect by the court does not make this a matter of malpractice.

Because the law was unsettled in 1979 when he rendered his opinion, defendant argues he cannot be held liable for an error in judgment. In *George v. Caton*, 93 N.M. 370, 600 P.2d 822 (Ct.App.1979), while recognizing a lawyer must exercise reasonable and ordinary care and diligence in the

---

**2.** Evidence was offered through Kapnison suggesting that this theory was an afterthought; however, since no finding was made to the contrary, we will assume, for the sake of discussion, that defendant did come to this conclusion when his advise was sought in 1979.

use of his skill and in the application of his knowledge to his client's cause, we said, "[a] lawyer is not liable, however, for an error in judgment if he acts in good faith and in an honest belief that his advice and acts are well founded and in the best interests of his clients." 93 N.M. at 376, 600 P.2d 822.

Defendant analogizes the duty to warn of potential liability to the informed consent in the medical field, claiming that while the duty to inform a patient of risks may be appropriate in medicine, it has no application in other professions "such as law, architecture, engineering or accounting." We need not answer such a broad statement; we confine ourselves to the facts of the present case.

In determining whether an attorney exercised the requisite degree of competence, the crucial inquiry is whether his advice was so legally deficient when given that he could be found to have failed to use such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. *Smith v. Lewis*, 13 Cal.3d 349, 118 Cal.Rptr. 621, 530 P.2d 589 (1975). However, as already noted, a mere error of judgment or mistake in point of law that has not been settled by the highest court of law and upon which reasonable lawyers may differ, will not subject an attorney to liability. *George v. Caton; Martin v. Burns*, 102 Ariz. 341, 429 P.2d 660 (1967); *Collins v. Wanner*, 382 P.2d 105 (Okla.1963).

Defendant's legal advice then must be evaluated based upon the indicia of the law available to him in 1979 when he gave the advice, not after *Diane, Inc. v. Kapnison*, when the law was settled. In 1979, Section 56–8–7 clearly limited the rates of commission for securing any loan. Section 56–8–8 imposed penalties for violating the statutory rates, including a fine and imprisonment, plus damages double the amount charged. At that time there were only two cases cited under these sections. In *Home Savings & Loan Association v. Bates*, 76 N.M. 660, 417 P.2d 798 (1966) the brief reference to Section 56–8–7 [then NMSA 1953, Section 50–6–13] only made clear that the section has no application absent a broker-principal relationship. The second case, *Forrest Currell Lumber Co. v. Thomas*, 81 N.M. 161, 464 P.2d 891 (1970) describes the two statutory sections and upholds an award of double damages found as a result of violation of the statute. Defendant testified that he considered these two cases. *Forrest Currell* would have, we believe, alerted an attorney as to the extreme penalties to which his client could be exposed for charging an excessive rate.

But, as noted above, defendant relied on Section 56–8–9(B) as a basis for getting around the constraints of Section 56–8–7 and the penalties under Section 56–8–8. We need not repeat the analysis in *Diane, Inc. v. Kapnison* which answers this theory, other than to note that well-established principles of statutory construction would have caused a careful practitioner to pause before coming to the conclusion that Section 56–8–9(B) impliedly overruled the two previous sections. Moreover, and of equal import, Section 56–8–9(B) deals with usury while Section 56–8–7 concerns brokerage rates. Defendant's own testimony bears this out.

The record discloses that in 1979, prior to *Diane, Inc. v. Kapnison*, defendant himself was aware of the well-settled principle of law in New Mexico that statutes are to be given effect as written, and where free from ambiguity, there is no room for construction. *State v. Elliott*, 89 N.M. 756, 557 P.2d 1105 (1977). In 1979, defendant was familiar with the brokerage statutes; he was aware that the focus of Section 56–8–7 was on the broker; and that the statutes made a distinction between interest and a brokerage fee. The record also discloses that defendant had previously advised an individual that his listed "finder's fee" was more than the maximum allowed by statute, referring to Section 56–8–7.

From the foregoing, one can expect that at the time defendant advised plaintiff as to the brokerage fee, defendant had reasonable grounds to consider, or should have considered, his interpretation ques-

tionable or debatable. Because of the distinctions present in defendant's own mind and the clarity of the language in the statutes, defendant had a duty to advise plaintiff on the potential exposure should his interpretation be deemed incorrect. As the court in *Smith v. St. Paul Fire & Marine Insurance Co.*, 366 F.Supp. 1283 (M.D.La. 1973), expressed:

> [I]f the attorney has reason to believe, or should have reason to believe that there could be some adverse consequences from taking the course advised, he is obligated to so advise his client. But if there is no reasonable ground for him to believe that his advise is questionable, he certainly has no obligation to advise clients of every remote possibility that might exist.

*Id.* at 1290.

Under the facts of this case, a lawyer possessing and exercising ordinary skill and capacity would have found it prudent to advise the client of the potential exposure under Section 56–8–8. Its language is clear and the penalties substantial. It is not the fact that defendant incorrectly interpreted the statutes that renders him liable; it is the failure to warn of potential liability to the client of adverse consequences which could result.

A further compelling reason exists for defendant to have advised the plaintiff of potential liability. The burden of potential liability clearly outweighed the benefit to the plaintiff. Defendant should have recognized this and taken a more conservative course. As stated by the court in *Smith v. Lewis:*

> We recognize, of course, that an attorney engaging in litigation may have occasion to choose among various alternative strategies available to his client, one of which may be to refrain from pressing a debatable point because [the] potential benefit may not equal [the] detriment in terms of expenditure * * * [of] time and resources or because of calculated tactics to the advantage of his client.

118 Cal.Rptr. at 627, 530 P.2d at 595.

■ The fact that an attorney's judgment may cause or result in litigation is not, in and of itself, a breach of duty to the client. Risk of litigation is often a necessary element or result of legal advice and legal representation. In fact, litigation often results from a disparity of professional judgment. *Ramp v. St. Paul Fire & Marine Insurance Co.*, 263 La. 774, 269 So.2d 239 (1972). Still, a lawyer who disregards a statute or is ignorant of it may render himself liable for losses caused by such negligence or want of skill. *George v. Caton.*

■ There is substantial evidence in the record to support a finding of malpractice. The facts indicate that defendant was aware, or should have been aware, of the potential exposure to his client. That defendant's interpretation of the statutes was based on an honest belief in the correctness of his advice should not under the circumstances here shield him from liability. The soundness of defendant's advice should be evaluated on more than a good faith belief; rather, whether he exhibited the requisite degree of competence. Given the circumstances as they existed in 1979, a reasonable and plain reading of the statutes would have warranted that defendant take a more conservative approach in interpreting the statutes by at least warning his client of the adverse consequence should his advice be incorrect.

### (c) Burden of proof.

Even assuming a duty to warn a client of potential liability, as we have found to exist under the facts here, defendant contends that Kapnison failed to meet his burden of proof.

■ To establish malpractice, testimony of another attorney as to the applicable standards of practicing attorneys is generally necessary. *Rodriguez v. Horton*, 95 N.M. 356, 622 P.2d 261 (Ct.App.1980). Both parties introduced the expert testimony of lawyers in order to establish or refute negligence on the part of defendant.

Defendant claims that the testimony of Kapnison's expert "is absolutely void of

any testimony which would establish malpractice." Specifically, defendant contends that plaintiff's expert never stated that defendant neglected a reasonable duty of care or that he deviated from recognized standards of legal practice in the community. Moreover, says defendant, the closest the expert came to addressing the issue was when he said that the loan brokerage agreement "on its face * * * incorporates a possible violation of the statute," referring to Section 56–8–7. Defendant reminds us that "probability," not "possibility" is the standard of proof. *See Buchanan v. Downing*, 74 N.M. 423, 394 P.2d 269 (1964) (holding expert testimony was insufficient where proximate cause established only as a possibility and not a probability).

■ We disagree with defendant's interpretation of the expert's testimony when viewed as a whole. After examining Section 56–8–7 and 56–8–8 the expert was asked in what regard would the loan brokerage agreement on its face appear to violate those statutes. His answer:

A My immediate calculation indicates to me that under the provisions of Paragraph 2 [referring to the loan brokerage agreement], there is a loan brokerage fee charged in excess of the stated amounts contained in 56–8–7.

The expert was then questioned as to whether his opinion would be any different if he assumed that the borrower was a corporation. He responded, "[i]t described the broker and it includes virtually every business entity that is known in the State of New Mexico. In effect, it says that you cannot receive in any form or fashion a fee in excess of the statutory amount." Put in the form of a hypothetical, the expert was asked if a lawyer, with a practice limited primarily to financial matters, who advised his client he could charge $25,000 for brokering a $165,000 loan, would fall within the standard of practice familiar to the expert. He answered:

A I wouldn't limit that standard to someone who is in business practice. I think that is just a standard that any lawyer who would be practicing at that

time would impose. While the profession of mortgage loan brokering may be somewhat esoteric, the statute itself is relatively easily understood.

While the expert had never considered the possibility of the statutory limitation of brokerage fees not applying to corporate borrowers, and admitted it was "somewhat ingenious," he testified:

Q You've testified that the theory espoused before the Supreme Court in *Diane, Inc. v. Kapnison* was, in your words, ingenious. Assuming that a lawyer came up with such a theory, would there be a duty on the part of the lawyer in 1979, applying the standards to which you've testified, to warn a client of a potential for liability under Section 56–8–8.

A I think that the client would have to be advised of the potential loss that could be suffered in the exposure under Section 56–8–8.

We are satisfied that this testimony sufficed to meet plaintiff's burden. We note that the expert did not volunteer to testify because of his friendship and respect for defendant, and was subpoenaed. Any reluctance to place fault on defendant did not detract from the clear import of the testimony.

### 3. The Award of Attorney Fees.

Defendant attacks the award of attorney fees on three grounds: First, defendant claims there is no legal basis to make an award. Second, the evidence will not support the award made. Third, the award is excessive. Because of our disposition of the first ground, we do not reach the third.

#### (a) Legal basis.

The trial court found:

15. As a proximate result of the advice given to Kapnison by Robinson, Kapnison was required to engage the services of Marchiondo & Berry, P.A., to defend the claim that Kapnison charged a broker fee in violation of New Mexico law. These legal services included all pre-trial

matters, an appeal of this Court's judgment in favor of Diane, Inc., against Kapnison to the New Mexico Supreme Court, *trial preparation, and trial of this matter on the merits.* (Emphasis added.)

16. As a proximate result of the advice given to Kapnison by Robinson, Kapnison incurred a reasonable attorneys fee in the amount of $25,000.00 plus tax and taxable costs.

■ The general rule is that each party to litigation must pay his own counsel fees, and attorney fees are not allowable in the absence of a specially authorizing statute or agreement. *State ex rel. Stanley v. Lujan,* 43 N.M. 348, 93 P.2d 1002 (1939). Pointing out that no statute, court rule or agreement provides for attorney fees in this case and that none of the exceptions mentioned in *Gregg v. Gardner,* 73 N.M. 347, 388 P.2d 68 (1963) apply, defendant argues that an award cannot find support in the law. We agree to the extent that the award included the "trial, preparation, and trial of this matter on the merits." (see highlighted portion of finding number 15 quoted above). A similar situation arose in *Lujan v. Gonzales,* 84 N.M. 229, 501 P.2d 673 (Ct.App.1972) where an award of attorney fees for defending a wrongful death action also included prosecution of an action against the insurance carrier which failed to defend. In that case we remanded to limit as an item of damages the award of attorney fees incurred in defending the wrongful death action. We do the same here. Thus, we must remand to eliminate any consideration of attorney fees for the present malpractice suit.

That attorney fees may not be awarded for this suit does not, however, answer the question as to whether vel non fees incurred in defending the claim brought by Diane, Inc. against Kapnison may be awarded as an item of damages. While the precise question has not been addressed in this state, our appellate courts have allowed the recovery of attorney fees under similar circumstances. In *Dinkle v. Denton,* 68 N.M. 108, 359 P.2d 345 (1961), the supreme court held attorney fees recoverable as part of accommodation indemnitor's expense of defending himself on a performance bond. This court in *Lujan v. Gonzales* recognized the right of an insured to recover from his insurer attorney fees incurred by an insured in defending a wrongful death action. The rule allowing attorney fees as an item of damages in legal malpractice case finds support in other jurisdictions. *See Sorenson v. Fio Rito,* 90 Ill.App.3d 368, 45 Ill.Dec. 714, 413 N.E.2d 47 (1980); *Ramp v. St. Paul Fire & Marine Insurance Co.; Coats v. Bussard,* 94 Mich.App. 558, 288 N.W.2d 651, *rev'd on other grounds,* 409 Mich. 858, 294 N.W.2d 692 (1980), *Hiss v. Friedberg,* 201 Va. 572, 112 S.E.2d 871 (1960); *Gustavson v. O'Brien,* 87 Wis.2d 193, 274 N.W.2d 627 (1979); Annot., 45 A.L.R.2d 62 (1956).

Perhaps the best reason for applying the exception to attorney malpractice is that expressed in *Sorenson v. Fio Rito:*

> Had the plaintiff been forced to hire an accountant to repair the damage caused by the defendant's conduct, she would undoubtedly have been entitled to recover the accountant's fee as an ordinary element of damages. There is no basis in logic for denying recovery of the same type of loss merely because the plaintiff required an attorney instead of an accountant to correct the situation caused by the defendant's neglect. In holding the defendant liable for the plaintiff's losses, we are not violating the policy against "penalizing" a litigant for defending a lawsuit. We are simply following the general rule of requiring a wrongdoer to bear the consequences of his misconduct.

45 Ill.Dec. at 719, 413 N.E.2d at 52.

■ Therefore, we hold that where, as here, a client is required to engage counsel to defend a separate action proximately resulting from his attorney's negligence, reasonable fees incurred may be awarded, not as costs, but as an item of special damages.

Defendant further argues that even if fees are allowable as damages, Kapnison's

appeal to the supreme court from the summary judgment should not be included since this was not foreseeable nor a proximate result of defendant's negligence. We disagree. In that appeal Kapnison advanced the same argument against Diane, Inc. as the defendant here claims to have relied on when he offered his advise. Had Kapnison been successful on appeal, defendant would have suffered no damages. The appeal resolved the question and was a necessary step in the defense.

### (b) Evidentiary support for the award.

Because we cannot separate the award of attorney fees as an element of damages in defending the Diane, Inc. claim from the prosecution of this malpractice claim, we address this issue only generally as an aid to the trial court on remand.

Proof of attorney fees as an item of special damage is really no different than proof of the cost of medical care or any other professional service made reasonably necessary by the negligence of another. The reasonable value of those services is ordinarily established by showing what a competent professional in the community would customarily charge for similar services.

Whether for the present case that would involve an hourly rate, a fixed fee or some other arrangement will depend on the proof. The fact that in this case Kapnison agreed to pay his attorneys a fixed amount is not necessarily determinative. We refrain from setting out any guidelines for proof of attorney fees, because the nature of the action and other factors may well dictate varying arrangements. We do point out, however, that while the *Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979) factors are presently applicable to worker's compensation cases, rigid adherence to those factors is not required outside that area of the law.

Because attorney fees have not heretofore been recognized as an item of damages in legal malpractice cases, and because of the lack of any guidelines as to what must be proved, we authorize the trial court on remand to accept additional evidence from both sides on this question.

### 4. Reduction of the Award.

In August of 1983, during the pendency of this claim, plaintiff entered into a release and satisfaction agreement with Diane, Inc. This agreement acknowledges the payment of $45,000 to Diane, Inc. from plaintiff and also assigns "the first proceeds of any Judgment which Kapnison may obtain against" defendant in an "amount sufficient to equal the difference between the sum of $45,000, already paid to Diane as aforesaid, and the amount of Diane's Judgment against Kapnison" ($50,-000).

Defendant's position is that the release and satisfaction agreement indicates that plaintiff's total liability to Diane, Inc., including interest, was settled for $45,000. Defendant argues that since plaintiff suffered damages of $25,000 against Diane, Inc., ($50,000 judgment less the $25,000 fee which plaintiff had retained), this should be reduced by $5,000 because of the assignment. Defendant contends that since plaintiff assigned away a contingent right to the proceeds, he ceased being the real party in interest as to any amount exceeding $45,000 and Diane, Inc., is the real party in interest as to that amount.

We reject defendant's argument. First, while Kapnison did obtain a full release for $45,000, the assignment of the first proceeds of any recovery against defendant represent a portion of the consideration for that release. As we interpret the release, if Kapnison recovered nothing from defendant, he would have no further liabilities to Diane, Inc., but if he recovered anything, Diane, Inc. would receive the first proceeds up to the full amount of its judgment. That judgment included interest which, incidentally, would exceed the $5,000 reduction defendant is claiming.

The test to determine if one is a real party in interest is whether he is the owner of the rights sought to be enforced, or whether he is in a position to release and discharge defendant from the liability upon

which the action is grounded. *Hall v. Teal*, 77 N.M. 780, 427 P.2d 662 (1967). The present case is analogous to *Hall*. Here, Kapnison owed money to Diane, Inc., and assigned "the first proceeds of any Judgment" against defendant. The release and satisfaction agreement assigned only the proceeds and not the right of action against defendant. Kapnison continued to be the owner of the right sought to be enforced and thus the real party in interest. Kapnison's action against defendant for the full $50,000 is maintainable.

## CONCLUSION

We affirm the finding of negligence and reject any reduction based on the release.

We remand for further proceedings on the attorney fee portion of the award in accordance with this opinion. Defendant shall pay the costs of appeal.

IT IS SO ORDERED.

DONNELLY, C.J., and NEAL, J., concur.