**John MERCHANT, a Washington resident, Plaintiff,**

v.

**KELLY, HAGLUND, GARNSEY & KAHN, a general partnership, Defendant.**

Civ. A. No. 92–B–2568.

United States District Court, D. Colorado.

Jan. 20, 1995.

Lance M. Sears, Sears, Anderson & Swanson, P.C., Colorado Springs, CO, for plaintiff.

Michael T. McConnell, Long & Jaudon, P.C., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this legal malpractice action seeking damages caused by the alleged negligence and breach of contract by defendant, Kelly, Haglund, Garnsey & Kahn (the firm), plaintiff John Merchant claims the firm breached a national standard of care involving federal income tax law by dividing assets in a pension and profit sharing plan through a post-nuptial marital agreement without the benefit of a Qualified Domestic Relations Order (QDRO). Although the firm has counterclaimed for a declaratory judgment that the marital agreement does not violate § 401(a)(13) of the Internal Revenue Code (IRC), this claim is considered the basis for the firm's argument that because there was no harm there was no foul and, thus, it is entitled to judgment as a matter of law.

The firm moves to dismiss this action. Both parties have submitted matters beyond the pleadings. Therefore, pursuant to Fed. R.Civ.P. 12(b), I treat the motion as one for summary judgment. The motions are fully briefed and orally argued. During argument counsel for Mr. Merchant conceded that his breach of contract claim is merged into his negligence claim. *See F.D.I.C. v. Clark,* 978 F.2d 1541, 1551 (10th Cir.1992). I conclude that the marital agreement constituted an alienation or assignment for purposes of 26 U.S.C. § 401(a)(13) and that genuine issues of material fact remain on Mr. Merchant's negligence claim. Consequently, I will deny the firm's motion.

### I.

No genuine dispute exists as to the following facts. Mr. Merchant retained the firm in 1988 to represent him in a dissolution of marriage action against his wife Linda Merchant. After filing the action in Colorado state court, Merchant and his wife reconciled. As part of the reconciliation, on November 15, 1988 the parties entered into a post-nuptial marital agreement dividing the marital property (the agreement).

The marital property included pension and profit sharing plans of the Merchant Company (the plan) which contained non-alienation provisions under the Employee Retirement Security Program (ERISA), 29 U.S.C. § 1001 et seq. (Def.Exh. T & U). The firm took no part in the drafting or implementation of the plan. Mr. Merchant was the sole shareholder in the company and the sole plan participant. When the agreement was executed the plan was worth approximately $95,000. Paragraph 1(A)(2)(c) of the agreement provided:

> Linda shall receive as her separate property an interest in the Merchant Company pension and profit sharing plan as follows: Within 60 days of this Agreement, John shall cause the segregation of a subaccount with a beginning value of no less than $42,750 in the Merchant Company pension or profit sharing plan, none of which shall include either note from John. This segregated account will be managed as required under the plan. On a continuing basis, John shall cause one-half of all Merchant Company pension and profit sharing contributions made in John's name, to be deposited into this segregated account for

Linda, up to a maximum of $5,000 per year. To the extent permissible by law, the investment vehicle chosen for the segregated account shall be as selected by Linda, with John's assistance ·and/or with the assistance of third parties as she elects. Linda shall receive financial reports regarding this segregated account on a regular basis. John shall not borrow from this segregated account. (Dft.Exh.A).

In 1989 the Merchants moved from Denver to Seattle. Mr. Merchant then retained the Seattle law firm of Bogle & Gates (B & G) to terminate the plan because it was "too costly to maintain." (Dft.Exh.F, p. 2). As part of the termination process, Mr. Merchant submitted an application for determination upon termination, form 5310, to the Internal Revenue Service (IRS) to determine whether the plan was "qualified" for tax exemption under the IRC. The provisions of the agreement were not disclosed in the application. (Dft.Exh.F). In February 1991, Mr. Merchant received a "favorable determination letter" stating the plan was qualified for tax exempt status. (Dft.Exh.G). Based on this determination, B & G advised Mr. Merchant that he could roll the funds over from the plan into a simplified employee pension plan (SEP) and an individual retirement account (IRA) without triggering federal income tax. (Dft.Exh.H).

However, in April of 1991, B & G advised Mr. Merchant that the agreement was "inconsistent with federal law insofar as it purports to assign benefits under these plans." (Dft.Exh.K). B & G recommended that Mr. Merchant obtain a QDRO. A QDRO is a domestic relations order issued pursuant to a ·state domestic relations statute which provides an exception to the non-alienation provision of 26 U.S.C. § 401(a)(13). (Dft.Exhibits K & L). If issued, the QDRO would have maintained the division of the proceeds from the plan as contemplated in the agreement. Mr. Merchant declined to follow this course of action.

For Mr. Merchant to receive a distribution of funds under the terminated plan, Mrs. Merchant had to sign a waiver of joint and survivor annuity benefits. (Dft.Exh.H). An amendment to the agreement was executed by the Merchants in March 1992 (amended agreement). (Dft.Exh.N). The amended agreement provided:

John and Linda agree that John's entire interest in the Merchant Company Pension and Profit Sharing Plan ("the Plan") is his separate property; provided, however, John shall immediately cause the Plan to terminate and he shall thereafter rollover his entire interest in the Plan to an individual retirement account held in his name ("IRA Rollover"). In connection with such termination, Linda shall agree to waive her rights to Plan assets (including her right to an annuity if she survives John) and to take any and all action necessary to permit a lump sum distribution to John. The IRA rollover shall thereafter be marital property. (Dft.Exh.N, P. 2).

The distribution of the plan funds as originally contemplated by the agreement was, by this amendment, negated.

Mrs. Merchant filed for divorce in Washington state court in July 1992. A divorce decree was entered in July 1993. The amended agreement served as a blueprint for the division of the marital property in the divorce proceeding, (L. Merchant Depo., Dft. Exh.P, p. 8), and Mr. Merchant claims he received substantially less from the proceeds of the plan than he would have received under the original agreement. (Evans Depo., Dft.Exh.Q, pp. 32–33). Ultimately, in June of 1994, Mr. Merchant entered into a "Closing Agreement" with the IRS by which the tax issues surrounding the plan were settled for $500. (Pl.Exh. 12).

Mr. Merchant filed this lawsuit claiming that the firm committed malpractice for failure to consider, research, and advise him of the potential federal tax implications of the agreement.

## II.

Summary judgment shall enter where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If a movant establishes entitlement to judgment as a matter of law given uncontrovert-

ed, operative facts contained in the documentary evidence, summary judgment will lie. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). The operative inquiry is whether, based on all the documents submitted, a reasonable trier of fact could find by a preponderance of evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Mares*, 971 F.2d at 494. Summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *Mares*, 971 F.2d at 494.

### III.

■ The first issue, one of law, is whether the agreement created an alienation or assignment under 26 U.S.C. § 401(a)(13). If it did, the plan funds lose their tax deferred status. I conclude that the agreement created an assignment or alienation of an interest in the plan in violation of § 401(a)(13).

Section 401(a)(13)(A) provides: "A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." Assignment or alienation includes "any direct or *indirect* arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest *enforceable against the plan* in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary." 26 C.F.R. § 1.401(a)–13 (emphasis added).

The firm contends the plan complies facially with § 401(a)(13) because the trusts provide that plan benefits may not be assigned or alienated. Thus, the firm argues that the provision of the Merchant's marital agreement in question here is unenforceable against the plan. Consequently, no violation of § 401(a)(13) occurred. Mr. Merchant responds that not only must the trust contain appropriate non-alienation language but that language must be followed in its operation.

Here he asserts the agreement violated the prohibition against assignment or alienation by granting Mrs. Merchant, a non-participant in the plan, rights and interests in its assets. I agree with Mr. Merchant. The agreement was not a mere "bookkeeping" measure but was a voluntary partition of plan assets without the benefit of a QDRO.

None of the specific exceptions to non-alienation apply here. Specifically, section 401(a)(13)(B) states that the non-alienation limitation will apply to domestic orders except "if the order is determined to be a qualified domestic relations order." 26 U.S.C. § 401(a)(13)(B). "In view of clear congressional intent … courts should exercise great restraint in divesting plan beneficiaries of that which Congress decided should be vested and should not search for exceptions in the statutory plan that Congress itself did not provide." *McLaughlin v. Lindemann*, 853 F.2d 1307 (5th Cir.1988). The Merchant's agreement was post-nuptial. Because no legal separation or dissolution of marriage existed or was then contemplated, § 401(a)(13)(B)'s QDRO exception was unavailable.

The firm argues that the agreement did not transfer any ownership rights to Mrs. Merchant because under Colorado law she had inchoate marital property rights in the plan. However, this argument ignores the statutory language and implementing regulations concerning the procedure by which a property division must occur to be excluded from the non-alienation provision of § 401(a)(13). 5 C.F.R. § 838.302. This procedure was not followed. In effect the agreement created a defined interest in the plan in favor of Ms. Merchant.

The regulations provide that any direct or indirect interest in a pension or profit sharing plan which is granted to one other than a plan participant is an alienation or assignment. The subaccount which was to be created by the agreement constitutes at least an indirect alienation or assignment in violation of § 401(a)(13). The statute contains specific exclusions from the non-alienation and assignment requirements which do not apply here. Accordingly, I conclude that the proposed division of the plan funds in the agree-

ment created an assignment or alienation in violation of § 401(a)(13).

## IV.

Having concluded that the agreement created an assignment or alienation, I turn to whether the firm is entitled to summary judgment on the negligence claim based on what it calls "judgmental immunity." This principle permits a court to determine, as a matter of law, that an attorney was not negligent based on an error in professional judgment because the law was unsettled on the issue or the attorney made a tactical decision from among equally viable alternatives. *Halvorsen v. Ferguson,* 46 Wash.App. 708, 735 P.2d 675, 681 (1986); *See Temple Hoyne Buell Foundation v. Holland & Hart,* 851 P.2d 192 (Colo.App.1992). The firm contends that it did not breach a duty owed to Mr. Merchant because the law regarding alienations and assignments under § 401(a)(13) was unsettled at the time the agreement was negotiated and executed.

Although construction of the IRC is a matter of Federal law, in this diversity action I apply Colorado's law governing negligence. Under Colorado law, "the duty owed a client by his attorney is to employ that degree of knowledge, skill, and judgment ordinarily possessed by a member of the legal profession at the time the task is undertaken. This issue of breach of duty is usually one of fact for the jury, and not for the judge, to resolve." *Fleming v. Lentz, Evans and King, P.C.,* 873 P.2d 38, 40 (Colo.App.1994). Although an attorney is not expected to be infallible, his client depends on his professional judgment which he must exercise with utmost caution. *See Myers v. Beem,* 712 P.2d 1092 (Colo.App.1985). An error in judgment, however, does not establish negligence or malpractice as a matter of law. *Id.*

The language of § 401(a)(13) and the regulations implementing that section call into question any attempt to create an interest in favor of other than a plan participant. "If language included within a document because of the acts or omissions of an attorney results in litigation, even if the language is ultimately construed in favor of the client, then the question remains whether reason-

ably prudent attorneys should have foreseen that the likely result of its inclusion would be litigation." *First Interstate Bank of Denver, N.A. v. Berenbaum,* 872 P.2d 1297, 1299 (Colo.App.1993); *See Temple Hoyne Buell Foundation v. Holland & Hart,* 851 P.2d 192 (Colo.App.1992).

Here, IRC § 401(a)(13) sets forth a rule with exceptions. The absence of case law on the issue does not shield the firm from errors in professional judgments made regarding the effect of the statutory language. *See, First National Bank of Clovis v. Diane, Inc.,* 102 N.M. 548, 553, 698 P.2d 5, 10 (N.M.App. 1985). Moreover, while IRC private letter rulings do not constitute court precedent they reflect the IRS's position concerning the application of the IRC to fact specific situations. PLR 8735032 (June 2, 1987), which was issued and published a year and a half before the Merchants executed their agreement, was adverse to Mr. Merchant on facts virtually identical to those here. No authority exists contrary to PLR 8735032. It is for the trier of fact to determine whether a reasonably prudent attorney in the firm's position would have become better informed, chosen a more conservative approach, or pursued other alternatives to the language employed in the agreement.

Moreover, the firm's causation argument based upon *Imel v. United States,* 523 F.2d 853 (10th Cir.1975) and *In re Questions Submitted by United States District of Colorado,* 184 Colo. 1, 517 P.2d 1331 (1974), is misplaced. Even if Mrs. Merchant's inchoate interest in the marital estate vested when the Colorado dissolution of marriage action was filed, it once again became inchoate when the action was dismissed. The agreement delineated Mrs. Merchant's interest in the plan and, therefore, contravened IRC § 401(a)(13). A genuine question of fact remains whether the firm's acts and omissions proximately set in motion the sequence of events which form the basis for Mr. Merchant's alleged damages.

Because genuine issues of material fact remain concerning breach of duty, causation and damages, summary judgment on the negligence claim must be denied.

## V.

Mr. Merchant alleges in the complaint that the firm committed malpractice for failure to consider the ERISA implications of the agreement. However, the firm took no part in drafting or implementing the plan and Mr. Merchant proffers no independent provision of ERISA violated by the agreement. The Code of Federal Regulations provides that a plan cannot qualify for treatment under ERISA if no employees are participants under the plan. 29 C.F.R. § 2510.3–3(b). "An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or the individual and his or her spouse...." C.F.R. § 2510.3–3(c)(1). Mr. Merchant owned 100% of the Merchant Company and was the sole participant in the plan. Consequently, he was not an employee. Accordingly, I conclude, and counsel for Mr. Merchant agreed at oral argument, that Mr. Merchant's claims are grounded under the provisions of the IRC and not ERISA.

Accordingly, it is ORDERED that:

1) The firm's motion for declaratory judgment is denied; and

2) The firm's motion for summary judgment on the negligence claim is denied.