453 P.2d 771

George WISEHART, Plaintiff
and Appellant,

v.

MOUNTAIN STATES TELEPHONE AND
TELEGRAPH COMPANY and Kit Carson
Electric Co-Op., Defendants and Appellees.

No. 265.

Court of Appeals of New Mexico.

March 14, 1969.

Rehearing Denied April 7, 1969.

Certiorari Denied April 30, 1969.

Eliu E. Romero, Taos, Frank Bachicha, Jr., Bachicha & Corlett, Santa Fe, for appellant.

G. Stanley Crout, Bigbee & Byrd, Sumner G. Buell, Montgomery, Federici, Andrews, Hannahs & Morris, Santa Fe, for appellees.

## OPINION

OMAN, Judge.

Plaintiff appeals from a summary judgment entered in favor of defendants. The sole question presented is whether the pleadings, plaintiff's deposition, and two affidavits filed by defendants, in support of their respective motions, show there is no genuine issue as to any material fact

**252**

and that defendants are entitled to judgment as a matter of law. Section 21–1–1(56) (c), N.M.S.A.1953. In deciding this question we must view the pleadings, deposition and affidavits in the most favorable aspect they will bear, including all reasonable inferences deducible therefrom, in support of the right to trial on the issues. Smith v. State, 79 N.M. 25, 439 P.2d 242 (Ct.App.1968); Butcher v. Safeway Stores, Inc., 78 N.M. 593, 435 P.2d 212 (Ct.App.1967); Simon v. Wilson, 78 N.M. 491, 432 P.2d 847 (Ct.App.1967).

It appears from the pleadings, deposition and affidavits, that:

(1) Plaintiff granted a right-of-way easement to defendants in 1960.

(2) Pursuant to their rights under this easement, defendants maintained their respective telephone and electric power wires upon a line of poles which traversed plaintiff's property from east to west.

(3) In 1965, plaintiff was making improvements on his lands just to the south of this line of defendants.

(4) As a part of his improvement program, plaintiff caused the level of his lands under the wires of defendants' line to be raised about 24 inches.

(5) On October 27, 1965, plaintiff was unable to get a truck started, and had someone in another vehicle pulling him at a speed of about one mile per hour.

(6) As he was being so pulled, he was travelling in a northeasterly direction and approaching defendants' line at approximately a thirty-degree angle.

(7) The towed truck in which he was riding had a steel structure, hereinafter referred to as a crane, mounted on the rear which plaintiff estimated extended upward to a point approximately 11 feet above the ground.

(8) As the truck in which plaintiff was riding was passing under the wires on defendants' line, plaintiff testified he heard the crane strike something, which sounded as if it was striking an insulated wire, that he felt the scraping between the crane and the wire, and that the truck then overturned on its right side.

(9) Plaintiff also testified that the wires were sagging at this point, and that as a result of the upset of the truck, caused by the crane striking against the wire, he suffered painful and disabling personal injuries.

(10) He also testified that the crane must have struck the wire of defendant, Mountain States Telephone and Telegraph Company, since it was the lower wire and the crane did not strike any electric wires.

(11) One of the affiants, who was an employee of defendant, Mountain States Telephone and Telegraph Company, stated that during the early part of November 1965, he measured the height above the ground of his employer's wire at its lowest point over the driveway where plaintiff claims to have had the accident, and that this height was 16 feet, 8¾ inches. He also stated he inspected the poles and supporting guy wires, and "* * * found no evidence of any disturbance which would be caused if the wire was hit with force."

(12) The other affiant, who was also an employee of the same defendant, stated that in the early part of November 1965, he inspected his employer's wire in the area pointed out to him by plaintiff, that the wire "* * * showed no signs of being hit by any object. * * *", and that it "* * * would easily show marks and scratches if hit by a metal object."

Defendants argue that the evidence before the trial court shows the wire was 16 feet, 8¾ inches above the ground at its lowest point, and that the crane extended only about 11 feet above the ground. They say these respective heights are not in dispute. Thus, they contend, it would have been a physical impossibility for the accident to have occurred as plaintiff claims.

■ There is at least one fallacy in this argument. According to affiant the wire was too high to have been struck by the crane. On the other hand, plaintiff testified the crane extended upward about 11 feet from the ground and struck the wire,

which caused the vehicle to overturn. Thus, the evidence as to the height of the wire above the ground is in dispute.

The fact that one affiant says he made a measurement of this height some time in the early part of November, and could find no disturbance of the poles and supporting guy wires, is not conclusive on the issues as to the height of the wire and whether the accident happened in the manner and at the time plaintiff claims. This measurement and inspection by affiant would not compel a trier of the facts to give complete credence to the claimed results thereof, and absolutely no credence to plaintiff's testimony as to the striking of the wire and the resulting upset of the vehicle.

■ Contrary to defendants' urgings, the claimed measurement and inspection by affiant does not place plaintiff's testimony at odds with natural laws, common experience, or physical facts. The principle of inherent improbability announced in the cases cited by defendants is just not applicable to the facts here present. The cases upon which defendants rely and in which this principle of inherent improbability was discussed are Alexander v. Cowart, 58 N. M. 395, 271 P.2d 1005 (1954); Ortega v. Koury, 55 N.M. 142, 227 P.2d 941 (1951); Crocker v. Johnston, 43 N.M. 469, 95 P.2d 214 (1939); Larsen v. Bliss, 43 N.M. 265, 91 P.2d 811 (1939); State v. Armijo, 35 N.M. 533, 2 P.2d 1075 (1931).

The fact that the other affiant says he was unable to find any evidence of injury to the wire some time during the early part of November, likewise is not conclusive that the crane did not strike the wire on October 27, as testified to by plaintiff.

These respective contentions, and the reasonable inferences deducible therefrom, do suggest a possible inconsistency. However, this suggested inconsistency is not to be resolved in a summary proceeding by equating affiant's statement with truth and plaintiff's testimony with falsity. The resolution of the apparent conflict, the credibility of the witnesses, and the weight to be given their testimony are questions for the trier of the facts.

■ Defendants urge that a party opposing a motion for summary judgment may not remain silent in the face of a meritorious showing by movant. Southern Union Gas Co. v. Briner Rust Proofing Co., 65 N.M. 32, 331 P.2d 531 (1958). We agree, but the deposition of plaintiff can hardly be considered as silence. We are also unable to see merit in the motion in view of plaintiff's testimony.

■ We agree that the mere argument or contention of the existence of a material issue of fact does not make it so [Baca v. Britt, 73 N.M. 1, 385 P.2d 61 (1963)], and that uncontroverted facts contained in affidavits must be taken as true [Martin v. Board of Education of City of Albuquerque, 79 N.M. 636, 447 P. 2d 516 (1968)]. But, as shown by the above recited facts, issues which must be resolved on a trial do exist, and the material portions of the affidavits are controverted.

The summary judgment should be reversed.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.