Neil MORRISON, Petitioner,

v.

Irwin I. KIMMELMAN, Attorney General of New Jersey; and John J. Rafferty, Superintendent, Rahway State Prison, Respondents.

Civ. A. No. 83–1428.

United States District Court, D. New Jersey.

Dec. 30, 1986.

Sweeney, Bozonelis, Stahle and Woodward by William E. Stahle, Chatham, N.J., for petitioner.

Irwin I. Kimmelman, Atty. Gen. by Arlene R. Weiss, Deputy Atty. Gen., Div. of Criminal Justice, Appellate Section, Trenton, N.J., for respondents.

## OPINION

STERN, District Judge.

This case is here on remand from the United States Supreme Court, *Kimmelman v. Morrison*, —— U.S. ——, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), *affirming, Morrison v. Kimmelman*, 752 F.2d 918 (3d Cir.1985), *vacating and remanding*, 579 F.Supp. 796 (D.N.J.1985). We had granted petitioner's habeas corpus petition under 28 U.S.C. Section 2254 (1976), holding that petitioner was denied his sixth amendment right to effective assistance of counsel, in light of counsel's failure to conduct any discovery, and his failure to make a timely request for exclusion of unconstitutionally seized evidence. 579 F.Supp. at 804. The Supreme Court thereafter announced a new standard for determining whether ineffective assistance of counsel is prejudicial enough to warrant a new trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). The Third Circuit remanded *Morrison v. Kimmelman* for a determination of prejudice under this standard. 752 F.2d at 923.

The State appealed, arguing that ineffective assistance claims are not cognizable where the error of counsel is only a failure to assert a Fourth Amendment claim. On appeal, the United States Supreme Court affirmed the judgment of the Third Circuit. The Court held that the restrictions on federal habeas review of Fourth Amendment claims announced in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), does not extend to Sixth Amendment ineffective assistance of counsel claims which are founded on incompetent representation with respect to a Fourth Amendment issue. The Supreme Court remanded the case to this Court for redetermination of the prejudice inquiry under the *Strickland* standard.

Upon remand, the State concedes that the underlying search and seizure in this case was unconstitutional. However, the State raises two claims which the Court must presently address. First, the State argues that federal habeas review may not extend to claims of ineffective assistance where counsel's primary error is failure to make a timely request for exclusion of illegally seized evidence. Second, in order to challenge the prejudicial effect of trial counsel's failure to move to suppress this seizure, the State wishes to present deposition or in-court testimony from the trial judge who sat as petitioner's trier of fact, in an effort to show that the receipt of this evidence did not prejudice the results in this non-jury trial.

## FACTS

The facts of this care are set forth fully in our prior opinion, 579 F.Supp. at 797–800. It is necessary, however, to review some of them here. Petitioner Morrison was convicted of forcible rape, carnal abuse, impairing the morals of a child, and private lewdness, in connection with the alleged rape of a fifteen year old girl who had worked at a fish store run by Morrison and a partner. Morrison waived his right to a jury trial. At Morrison's March 1979 bench trial, the prosecution introduced into evidence a sheet taken from a bed in a room that Morrison had used in Morrison's apartment building. The sheet contained stains that laboratory technicians testified were sperm traces from a man with type "O" blood. Morrison had type "O" blood, and type "O" sperm was found in the alleged victim's vagina in the course of a vaginal wash performed at a hospital after the alleged rape. The sheet also contained head hairs matching the alleged victim's hair and ones matching Morrison's hair.

The police officer who seized the sheet had neither a warrant nor Morrison's consent. Because Morrison's attorney failed to conduct any discovery, he was unaware that the state was in possession of the sheet until it was introduced into evidence. He failed to make a timely motion to suppress as required by New Jersey Court Rule 3:5–7(a). The trial judge admitted the evidence because it was too late to suppress. He also allowed testimony by the police officer who seized the sheet and the lab technicians who performed tests on it. He noted that there would have been a

"very valid basis for suppression" had it been timely made. Criticizing defense counsel for failing to conduct discovery, the trial judge remarked that the State's possession of the sheet was indicated on both a police report and a report of a chemical analysis ordered by the State.

At trial, the prosecution's version of the facts was based on testimony by the victim and her mother. The victim testified that she worked at Morrison's fish store. On the day of the alleged rape, she was asked by Morrison to accompany him on some deliveries. After going to a few bars, the victim testified that Morrison drove her to his apartment building and raped her. A friend and tenant of Morrison's, named Wesley Harris, had been with them in the apartment building but left just before the rape. Morrison then drove the girl home. She told her mother what had happened, and her mother called the police.

Morrison put four witnesses on the stand to develop a different version of the facts. His partner testified that he had fired the girl the day before the alleged rape. Morrison stated that he owed her money for wages due and that he was unable to pay her when she showed up on the day of the alleged rape. She therefore proposed to accompany him while he collected money due to him. They set off together, not to make deliveries, but, instead, to get money from clients of the fish store and from tenants in Morrison's apartment building who owed him rent. At the apartment building, the girl waited in the room where the alleged rape occurred while Morrison tried in vain to collect money from the tenants. Wesley Harris testified that he was with Morrison or the girl for virtually the entire time they were in the building. By Morrison's account, he never had sex with the girl, but he had had sex with women on the bed where the girl waited. A friend of Morrison's also used the bed for the same purpose. Morrison and the girl returned to the fish store, and the girl proceeded home unpaid. The girl's mother subsequently told Morrison she would "fix him" for not paying the girl.

In Morrison' version, although the girl's mother filed charges, she told Morrison several times thereafter that she would drop them. The mother admitted meeting with Morrison and her daughter on the Sunday before the trial started. According to Morrison, the mother renewed her promise to drop the charges on that occasion, and the daughter admitted she had not been raped. The girl, who had already had a child by her boyfriend, indicated that she was afraid her mother would find out about her on-going sexual relationship with this man. Thus, Morrison depicted the rape accusation either as an effort to force Morrison to pay or as revenge for the firing and failure to pay.

In summation, the prosecution stressed that the sperm found in the girl's vagina could be reconciled with Morrison's story only if the girl had sex with her boyfriend on the day in question. But, as the prosecution stressed, defense counsel had not tested the boyfriend's blood type or called him to testify. The State also contended that common sense made Morrison's story improbable. If the girl and her mother were framing Morrison, they would not have concocted a story that placed Wesley Harris in the same room with Morrison and the girl.

## DISCUSSION

The Third Circuit, on review, addressed three issues. First, the Court affirmed our holding that the rule of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), barring collateral review of a fourth amendment claim, did not preclude our consideration of petitioner's sixth amendment claim. 752 F.2d at 920. The Supreme Court agreed, writing:

> Were we to extend *Stone* and hold that criminal defendants may not raise ineffective assistance claims that are based primarily on incompetent handling of Fourth Amendment issues on federal habeas, we would deny most defendants whose trial attorneys performed incompetently in this regard the opportunity to

vindicate their right to effective trial counsel.

106 S.Ct. at 2585.

The Third Circuit also agreed with this Court's application of the first component of the *Strickland* test, the competency standard. *Id.* 106 S.Ct. at 2591. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, the Supreme Court set forth "two components" of the test for ineffectiveness. The first requirement is a showing that counsel's performance was deficient. *Id.* Instead of setting forth specific guidelines, the Supreme Court in *Strickland* embraced the standard of "reasonably effective performance," *Id.* at 2064–65, previously adopted by this Circuit, *see Moore v. United States,* 432 F.2d 730, 736–37 (3d Cir.1970), and by all other circuits, *see* 104 S.Ct. at 2064. In assessing the performance of petitioner's counsel, this Court had applied the same standard subsequently adopted in *Strickland.* 597 F.Supp. at 802.

On appeal, the Third Circuit agreed with this Court's determination that the conduct of Morrison's counsel fell below an objective standard of reasonableness. 752 F.2d at 922. The Supreme Court affirmed, noting that "counsel's performance fell below the level of reasonable professional assistance in the respects alleged," 106 S.Ct. at 2089.

The Supreme Court thus remanded this case only for application of the second component of the *Strickland* test, the showing of prejudice.

### I. *The State's Motions*

Before engaging in an analysis of the prejudice component of the *Strickland* test, this Court must first address two issues raised by the State in response to the Supreme Court's remand. First, the State argues that the introduction of illegally obtained evidence can never satisfy the prejudice prong of the *Strickland* test. Second, the State argues that this Court should elicit evidence from the state trial judge to clarify the verdict, bearing on the issue of whether the petitioner has proven that, but for the admission of the bedsheet evidence, the result of the proceedings would have been different. For the reasons discussed below, this Court rejects both assertions by the State.

### (A) *Illegally Seized Evidence and the Prejudice Component of Strickland v. Washington.*

■ The State argues that the admission of illegally seized but reliable evidence can never constitute prejudice under *Strickland.* In *Strickland,* the Court recognized that ineffective assistance of counsel claims were intended to protect defendants against fundamental unfairness. 104 S.Ct. at 2063. Thus, or so the State contends, only errors which call into question "the basic justice of a defendant's conviction" suffice to establish prejudice under the test.

In support, the State cites the concurrence in *Kimmelman v. Morrison,* 106 S.Ct. at 2591, written by Justice Powell, and joined by Chief Justice Burger and Justice Rehnquist. Justice Powell writes:

[T]he harm suffered by respondent in this case is not the denial of a fair and reliable adjudication of his guilt, but rather the absence of a windfall. Because the fundamental fairness of the trial is not affected, our reasoning in *Strickland* strongly suggests that such harm does not amount to prejudicial ineffective assistance of counsel under the Sixth Amendment.

*Id.* 106 S.Ct. at 2594. The State argues that petitioner has not been denied a fair trial; rather, "at most he has been denied a windfall." States Brief at 7. Thus, as a matter of law, the State contends that petitioner may not establish prejudice under *Strickland.*

This Court rejects the State's argument. As we read the opinion in *Kimmelman v. Morrison,* respondent's argument was specifically rejected by a majority of the Supreme Court. The rights of the constitution are granted to the innocent and the guilty alike; the Sixth Amendment guaran-

tee of effective assistance of counsel does not attach only to matters "affecting the determination of actual guilt." 106 S.Ct. at 2586. Justice Brennan, writing for six members of the Court, eloquently stated:

We also reject the suggestion that criminal defendants should not be allowed to vindicate through federal habeas review their right to effective assistance of counsel where counsel's primary error is failure to make a timely request for the exclusion of illegally seized evidence—evidence which is "typically reliable and often the most probative information bearing on the guilt or innocence of the defendant." *Stone,* 428 U.S. at 490, 96 S.Ct. at 3050. While we have recognized that the "premise of our adversary system of criminal justice ... that partisan advocacy ... will best promote the ultimate objective that the guilty be convicted and the innocent go free," (citations omitted), underlies and gives meaning to the right to effective assistance, (citations omitted), we have never intimated that the right to counsel is conditioned upon actual innocence.

*Id.*

Moreover, this Court is satisfied that were petitioner precluded, as a legal matter, from establishing prejudice under the facts of this case, this matter would never have been remanded to this Court for further consideration. There would have been no point to it. Both the Third Circuit and the Supreme Court, however, have specifically directed this Court *to determine* whether Counsel's failure to prevent the admission of the illegally obtained evidence constituted prejudice. That inquiry would have been superfluous if the answer to it was irrelevant because of the "windfall" argument.

*(B) Eliciting Evidence from the State Trier of Fact*

■ The State also contends that this Court should receive evidence from the State Court trial judge, sitting as trier of fact, concerning how he weighed the evidence and whether, absent the bed sheet

evidence, he would have convicted the petitioner. In support, the State raises three arguments: (1) that the Supreme Court, in *Strickland,* left open the possibility that such evidence would be admissible; (2) that case law supports the admissibility of such evidence; and (3) that sound policy reasons justify allowing the state trial judge to clarify his opinion as to the impact of the bedsheet evidence. This Court rejects all three grounds for admission.

First, this Court reads the *Strickland* opinion to *restrict* admission of such testimony in application of the prejudice component of the ineffectiveness test. While noting that it need not "consider the general admissibility of [the trial judge's testimony]," the *Strickland* Court stated that such "testimony is irrelevant to the prejudice inquiry." 466 U.S. at 700, 104 S.Ct. at 2072. More specifically, the Court wrote:

The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decisionmaker.... Thus, evidence about the actual process of decision, if not part of the record of the proceeding under review, and evidence about, for example, a particular judge's sentencing practices, should not be considered in the prejudice determination.

*Id.* Thus, any reading of *Strickland* that interprets the decision so as to condone the admission of such evidence is, in this Court's opinion, misplaced.

Second, contrary to defendant's assertion, it is a firmly established rule in our jurisprudence that a judge *may not* be asked to testify about his mental processes in reaching a judicial decision. *Washington v. Strickland,* 693 F.2d 1243, 1263, *cert. granted,* 462 U.S. 1105, 103 S.Ct. 2451, 77 L.Ed.2d 1332, *reversed on other grounds,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *rehearing denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864. The Supreme Court, in *Fayerweather v. Ritch,*

195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193 (1904), clearly held:

> [T]he testimony of the trial judge, given six years after the case has been disposed of, in respect to matters he considered and passed upon, was obviously incompetent. True, the reasoning of the court for the rule [prohibiting testimony by jurors] is not wholly applicable, for as the case was tried before a single judge there were not two or more minds coming by different processes to the same result. Nevertheless no testimony should be received except of open and tangible facts—matters which are susceptible of evidence on both sides. A judgment is a solemn record. Parties have a right to rely on it. It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision.

*Id.* at 306–7, 25 S.Ct. at 67. *See also United States v. Crouch,* 566 F.2d 1311, 1316 (5th Cir.1975).

Just as courts will not review the motives of a legislature in enacting a law, *See, e.g., Fletcher v. Peck,* 10 U.S. (6 Cranch) 87, 130, 3 L.Ed. 162 (1810); *May v. Cooperman,* 572 F.Supp. 1561, 1564 n. 2 (D.N.J. 1983); courts have traditionally been unwilling to review the mental processes of a trial judge. *See, e.g., United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941) ("It was not the function of the court to probe the mental processes of the Secretary.... Just as a judge cannot be subjected to such scrutiny.... so the integrity of the administrative process must be equally protected.") Similarly, in *United States v. Crouch, supra,* the court held:

> The trial judge's statement of his mental process is so impervious to attack that even if he were to come forward today and declare that his memorandum misstated his reasons for the mistrial, we

could not consider his explanation.... 'It is inappropriate ... to base an appellate opinion on assertions dehors the record.'

*Id.* at 1316 (citations omitted).

Finally, notwithstanding the legal tradition teaching against review of a trial judge's decisionmaking process, this Court is of the opinion that the overwhelming policy considerations support adherence to this general rule.

The concerns generated in allowing such testimony from a judge sitting as trier of fact are analogous to those contemplated in Fed.R.Evid. 606(b), which restricts the availability of jurors as witnesses.[1] Rule 606(b) forbids jurors from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith." *Id.* It is well established that "inquiry into the conscience or compliance of jurors ... requires inquiry into a matter that essentially inheres in the verdict ... and is thus strictly forbidden." *United States v. D'Angelo,* 598 F.2d 1002, 1004 (5th Cir.1979).[2]

Certainly, had petitioner been convicted by a jury, the respondent would not consider moving to have the individual members testify. This Court can find no principled basis for distinction between an inquiry into the thought process of a single juror—that is, the judge—and a similar inquiry into the mental processes of all twelve jurors. The judge in a bench trial is, in effect, the sole juror. To draw an artificial distinction between bench trials and jury trials, and preclude testimony from the trier of fact in one but not the other, would not only unnecessarily burden the free exercise of the decision whether or not to

---

1. Judges are clearly precluded from testifying in trials over which they preside. Fed.R.Evid. 605.

2. Similarly, the notes following Rule 606(b) wisely warn of the repercussions were "the mental operations and emotional reactions of jurors in arriving at a given result ... allowed as a subject of inquiry." Notes of Advisory Committee on Proposed Rules, Subdivision (b).

waive trial by jury, but would also unduly prejudice the defendant in the present case.

Further, similar considerations underlie the rule against probing the mental process of the jury and that of a trial judge. First, such testimony is inherently suspect. The risk of inaccuracy, in the opinion of this Court, outweighs any probative value such evidence might have. "The testimony is often given several years after the fact and a judge is unlikely to be able to reconstruct his thought processes accurately over such a span of time." *Washington v. Strickland, supra* at 1263.

Moreover, the fact that the state trial judge might be *willing* to testify is irrelevant to this consideration. Our concern with the accuracy and probative value of the testimony remains the same, irrespective of whether the testimony is voluntarily or involuntarily provided. Moreover, this Court is satisfied that if such testimony were admitted, the line between voluntariness and involuntariness would quickly become blurred. A petitioner against whom such evidence were introduced should, arguably, be entitled to cross-examination and discovery. Concerns with judicial immunity, comity, and independence would thus arise regardless of the circumstances which might have brought the testimony of the trier of fact into court.

Finally, this Court is of the opinion that such an inquiry is prohibited by general consideration of judicial finality. When a verdict is rendered, neither the judge nor the jury is asked for justifications. The decision may be reviewed and reversed, modified or amended. However, the trier of fact is not to be placed on the witness stand and cross examined as to the reasons for the outcome, absent evidence of improprieties in the decision making process itself. If a judge seeks to give reasons for a decision, we are wiser for what is said on the record. However, once a judicial opinion is written and filed, we are all as expert in its interpretation as the hand that wrote it. It belongs to us all.

This court is thus satisfied that the Supreme Court opinion in *Strickland,* judicial precedent, and public policy compel the rejection of defendant's request to introduce evidence regarding the thought process of the trier of fact.

## II. Application of the Prejudice Component of *Strickland v. Washington.*

■ This case has been remanded to this Court for application of the prejudice component of the *Strickland* test. When this Court issued its decision in *Morrison,* we applied the standard for prejudice set forth in *United States v. Baynes,* 687 F.2d 659, 670–71 (3d Cir.1982). In *Baynes,* the Third Circuit wrote that "when a conviction is tainted by ineffective assistance ... a court should expect the habeas petitioner to demonstrate that there is a 'reasonable possibility' that had the error of which he complains not occurred, the jury might have arrived at a different outcome." *Id.* As we said in our prior opinion:

> ... [I]n order to find prejudice we need not determine that the evidence derived from the sheet constituted the basis for the finding of guilt; rather, we need only decide that its admission was not harmless beyond a reasonable doubt.

579 F.Supp. at 803. Under this standard, we had little difficulty concluding that the prejudice suffered by Morrison because of his attorney's ineffectiveness was not harmless beyond a reasonable doubt. *Id.* at 803–4.

The standard announced in *Strickland* is worded slightly differently. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 104 S.Ct. at 2065. It is not clear that the Supreme Court, in affirming the Third Circuit, views this as a higher standard than that of *Baynes.* The use of the phrase "reasonable probability," rather than "reasonable possibility," does not seem to make much, if any, change. "Reasonable possibility" suggests an appreciable chance of a different outcome. On the

other hand, "reasonable probability," by itself, might suggest a greater than 50/50 chance of a different outcome. Let us note, however, that the Supreme Court's own definition of "reasonable probability" does not sit well with even this possible distinction.[3] A "probability sufficient to undermine confidence in the outcome" suggests an appreciable chance of a different outcome. Where a verdict is rendered by a standard of beyond-a-reasonable-doubt, any significant change—which is another way of saying an "appreciable change"—of a different outcome would surely be adequate to undermine confidence in the outcome. In any case, it is exceedingly difficult to measure or state clearly the difference between the *Baynes* standard and the *Strickland* standard. It is all a thicket of words. Nonetheless, we must apply the spirit of them to this case.

The Supreme Court instructs us that in making this prejudice determination, a court "must consider the totality of the evidence before the judge or jury." *Strickland*, 104 S.Ct. at 2069. In other words, this Court must attempt to recapture mentally all the evidence that weighed in favor or against Morrison in the mind of the trial judge. Then this Court must alter the "evidentiary picture" by imagining what it would have been in the absence of ineffective assistance of counsel. *Id.* This means determining what factual findings were affected by the attorney's errors and to what extent they were affected. *Id.*

The Supreme Court also instructs us to assume a decisionmaker acting "according to law," not arbitrarily or capriciously,[4] and one who is "reasonably, conscientiously, and impartially applying the standards that govern the decision," not one who is prejudiced or unusually prone to be harsh or lenient. *Id.*

In sum, we should conceptualize the evidence as it actually was, adjusted to compensate for attorney errors, but we should assume a decisionmaker, not necessarily as he actually was, but as he should have been. Then we must decide whether there is a "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 2069.

Assuming that *Strickland* presents a higher standard than *Baynes*, the errors of failing to test the blood type of the girl's boyfriend, and of failing to call him to testify, were not so damaging to Morrison as the attorney's ignorance of the bedsheet. A blood test would have helped Morrison only if it showed the boyfriend had "O" type blood, and his testimony would have helped only if he admitted to a sexual encounter with the girl not too long before her hospital tests. By themselves, these errors might fall short of the "reasonable probability" standard.

The defense attorney's failure to discover the seizure of Morrison's bedsheet is a different matter. The State is not contesting the illegality of the seizure; it is highly probable, as the trial judge himself suggested, that absent this error, the sheet would have been suppressed. In that case, the testimony and reports of the lab technicians and the police officer about the sheet would have been excluded. We assume a trial judge who would have completely ignored all this evidence in arriving at his decision on guilt or innocence, for we must assume a completely lawful decisionmaker. *Id.* at 2068.

Assessing the impact of the attorney's failure to discover the sheet on the evidentiary picture, we acknowledge that it did not destroy Morrison's version of the facts. The girl could have lost hair on the sheet simply by sitting on the bed as Morrison said she did. The type "O" semen on the sheet is reconcilable with Morrison's story that he and a friend had used the bed for sexual encounters with other women. It is

---

3. Justice O'Connor, writing for the majority in *Strickland*, noted: "... [W]e believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Strickland*, 104 S.Ct. at 2086.

4. "A defendant has no entitlement to the luck of a lawless decisionmaker...." *Id.* at 2068.

probable, however, that but for the admission of the sheet these somewhat prejudicial explanations would not have come before the factfinder.

The sheet was very important to the complainant's version. Apart from the evidence of the sheet and the vaginal washes, her version rested on her word alone. The credibility of her word suffered from numerous inconsistencies in her testimony, inconsistencies that the trial judge alluded to before giving his verdict. Her credibility suffered also from Wesley Harris' testimony, and from the fact that she and her mother met with Morrison at least once at their house before the trial started. The sheet provided some objective confirmation for her story. Our prior opinion stressed the "significance in a rape case of a sheet, taken from the defendant's own bed within a short time after the alleged rape occurred, which has semen stains matching defendant's blood type and hairs matching the head hair of both defendant and the victim" 579 F.Supp. at 803.

The trial judge's guilty verdict was accompanied by "some" observations rather than a full-blown account of his reasoning. He acknowledged that nothing was "cut and dry", and that there were "discrepancies" in both versions. The judge briefly discussed some of these. It is true, as the State points out, that the judge did not mention the sheet or testimony derived from it in his final remarks. But since the judge was merely making a few observations, rather than a thorough explanation of his decision, we attach no significance to his failure to mention the sheet. *See* 579 F.Supp. at 804.

We conclude that the defense attorney's errors dramatically affected the evidentiary picture in this case. We contrast the impact of the errors here with those in *Strickland,* which the Supreme Court found insufficiently prejudicial. 104 S.Ct. at 2071. In *Strickland,* the defendant had confessed to several crimes including multiple murder. The alleged errors of defense counsel had to do with his decision not to present certain evidence at his client's sentencing hearing. The attorney discussed his client's background with him, his wife and his mother, but the attorney did not otherwise seek character witnesses or request a psychiatric exam. *Id.* at 2057. He also excluded evidence he thought potentially damaging. Notably, he successfully moved to exclude defendant's "rap sheet," because it contained a criminal history that would have undermined his claim of no significant history of criminal activity. *Id.* At the hearing, the petitioner was sentenced to death.

As the Supreme Court noted, the evidence petitioner claimed his counsel should have offered "would barely have altered the sentencing profile." *Id.* at 2071. The rap sheet would have prejudiced the defendant. *Id.* The psychological reports would have directly contradicted the defendant's claim that he was suffering extreme emotional disturbance.[5] Moreover, the aggravating factors were so overwhelming—three heinous murders involving repeated stabbings, committed in the course of a robbery—that there was no reasonable probability that evidence of mitigating factors would have outweighed the aggravating factors. *Id.*

By contrast, the judge in Morrison's trial faced a close decision, and but for the defense attorney's errors, it is highly probable that the evidentiary picture would have been very different. In our judgment, it is a least "reasonably probable" that but for the attorney's errors, the balance would have tilted in favor of Morrison's version, and that he would have been acquitted.

In sum, we find petitioner was deprived of his Sixth Amendment right to effective assistance of trial counsel, and that this deprivation made it "reasonably probable" that but for the attorney's errors, the result of the proceedings would have been

---

5. In seeking subsequent collateral relief, the defendant submitted a psychiatric and a psychological report, each stating that although the defendant was chronically frustrated and depressed, he was not under an extreme mental or emotional disturbance. 104 S.Ct. at 2058.

different. Accordingly, petitioner is entitled to a new trial. The writ of habeas corpus will be granted.

Finally, the Court wishes to express our admiration and appreciation for the efforts of Mr. William Staehle, who, as counsel appointed to represent Mr. Morrison, has diligently and ably prosecuted this case before this Court, the Court of Appeals, the United States Supreme Court and again before this Court.