848 P.2d 1086

**Ross Sterling HYDEN, Plaintiff–Appellant,**

v.

**The LAW FIRM OF McCORMICK, FORBES, CARAWAY & TABOR, a New Mexico partnership; J.W. Forbes, individually; and Cas Tabor, individually, Defendants–Appellees.**

**No. 12916.**

Court of Appeals of New Mexico.

Jan. 12, 1993.

Certiorari Denied Feb. 16, 1993.

Perry C. Abernethy, Marek & Yarbro, P.A., Carlsbad, for plaintiff-appellant.

Robert E. Sabin, Jeffery D. Tatum, Atwood, Malone, Mann & Turner, P.A., Roswell, for defendants-appellees.

## OPINION

PICKARD, Judge.

Plaintiff sued defendants for legal malpractice. The trial court granted summary judgment to defendants, and plaintiff has appealed. The issue before us is whether summary judgment was improperly granted. In making this decision, we are also called on to decide the subsidiary issues of whether the trial court correctly applied collateral estoppel against plaintiff based on proceedings in an earlier lawsuit, and whether in doing so the trial court erroneously considered two affidavits from the presiding judge in the underlying case. We reverse.

The genesis of the case before us lies in an earlier suit for breach of contract, fraud, and negligent misrepresentation. The parties to the earlier suit were plaintiff, who owned an automobile dealership, and Scott Tubb, who contracted to buy the dealership. Tubb and his father initiated discussions with plaintiff for the purchase of the dealership in March 1985. The elder Tubb had previously approached plaintiff on several occasions in 1982–83 about selling the dealership, but no sale agreement resulted during that time. In 1985, when sale discussions resumed, the Tubbs asked for financial data, which plaintiff provided. The parties reached a general understanding and agreement on the sale of the business. The Tubbs asked defendant Cas Tabor, an attorney with the defendant law firm, to draft the written contract for purchase and sale of the dealership. At the time, plaintiff had had a fifteen-year attorney-client relationship with the law firm, which regularly represented him primarily through the person of its senior partner, defendant J.W. Forbes.

Tabor recognized the potential conflict of interest involved in drafting the contract for the Tubbs in light of the firm's prior relationship with plaintiff, and he consulted briefly with Forbes on the propriety of taking on the work at the request of the Tubbs. Forbes encouraged Tabor to undertake the representation in order to enhance the likelihood that the firm could maintain the automobile dealership as a client after Tubb purchased it. Tabor proceeded to represent the Tubbs in the purchase of the dealership.

After Tabor had prepared the first two drafts of the contract, Scott Tubb asked Tabor to include language imposing warranty obligations on plaintiff with respect to the financial statements provided to Tubb. When Forbes discovered the warranty language in a draft of the agreement, he contacted plaintiff and asked whether plaintiff could in fact warrant the financial information. Plaintiff communicated his uncertainty to Forbes about doing so, and Forbes told plaintiff that he was going to change "that language." However, other warranty language was retained in the final agreement, and, according to plaintiff, defendants failed to advise him of the risks involved in their dual representation of him and Tubb. Plaintiff also contends that defendants failed to explain what misrepresentation entails or the extent of his exposure for any misrepresentations he might have made. *Cf. First Nat'l Bank v. Diane, Inc.,* 102 N.M. 548, 553, 698 P.2d 5, 10 (Ct.App.1985) (recognizing attorney's duty to warn client of potential liability and exposure under existing law).

The purchase price for the dealership was $920,000. Under the final agreement, Tubb made a partial payment, which purchased 49% of the stock in the business, and obtained an option to purchase the remaining 51% at a later date. After the final agreement but before exercising that option, Tubb discovered that some of the financial records provided by plaintiff during sale negotiations were inaccurate. Tubb sued plaintiff based on the warranty language. That language required plaintiff to warrant the accuracy of financial information and held him liable for any inaccuracies discovered within two years of the sale. Tubb sought either rescission or damages.

The matter of Tubb versus plaintiff was tried in the district court of Eddy County by Judge Harvey W. Fort without a jury. The defendant law firm represented plaintiff throughout pretrial proceedings and on the first day of trial. After that, Forbes and the firm were disqualified as counsel in order to become witnesses in the case, and new counsel assumed plaintiff's representation. After hearing evidence and argument of counsel, Judge Fort orally denied Tubb's demand for rescission, noting that Tubb had allowed the business to deteriorate during the tenure of his management. Judge Fort similarly found fault with plaintiff, indicating his intent to find that plaintiff knew or should have known about the inaccuracy of the financial documents and that he negligently failed to divulge the information to Tubb. No findings of fact or conclusions of law were ever requested by the parties or entered. Reduced to its essential terms, the written judgment filed after trial on January 31, 1987, provides that (1) "[t]he * * * total consideration of Nine Hundred Twenty Thousand Dollars ($920,000.00) should be reduced to Six Hundred Twenty–One Thousand Dollars ($621,000.00)"; (2) the reduced sum constitutes a complete resolution of all the disputes between the parties arising out of the contract; and (3) Tubb owed plaintiff a total of $621,000 for 100% of the stock in the dealership. No punitive damages were assessed against plaintiff, and each party was ordered to pay his own costs, expenses, and attorney fees. Plaintiff accepted payment from Tubb, and neither party appealed in that case.

Judge Fort retired from the bench on December 31, 1988. After plaintiff filed his complaint in this case, defendants obtained two affidavits from Judge Fort. In the first affidavit, dated April 25, 1989, Judge Fort stated that his decision in the underlying case was not based on the terms of the contractual provisions between the parties, but rather upon his conclusion that plaintiff had defrauded Tubb, and that Judge Fort was prepared to make such a finding based upon clear and convincing evidence. In the second affidavit, dated July 9, 1990, Judge Fort asserted that after a full trial on the merits, he made an oral finding of fact that "[t]he purchase price that a willing buyer would have paid a willing seller if the true facts about the dealership's finances had been disclosed was $621,000.00." He also concluded in the affidavit, based on his oral findings, that plaintiff was liable to Tubb for misrepresenting the finances of the dealership in the amount of the difference between the contractual price of the dealership and the actual value, i.e., "the amount that a willing buyer would have paid a willing seller if the true facts about the dealership's finances had been disclosed."

These affidavits; two affidavits from plaintiff's expert, attorney Barry H. Barnett; and other deposition and documentary evidence were before Judge Ralph W. Gallini, who entered summary judgment for defendants and dismissed plaintiff's complaint with prejudice. Judge Gallini based his ruling primarily upon a determination that the fair market value of the business was ascertained by Judge Fort and that plaintiff was not entitled to relitigate that determination. The briefs do not reveal why Judge Gallini granted summary judgment as to plaintiff's other claims for damages. In fact, defendants have informed us that they do not oppose a remand for trial to determine whether their services fell below the standard of competence and loyalty, and if so, whether that was the proximate cause of expenses incurred by plaintiff in the prior suit or of plaintiff's increased allergies due to stress. Furthermore, in order to avoid a factual dispute on this point, defendants have disclaimed, both below and on appeal, any reliance on Judge Fort's statement in his first affidavit that he was prepared to make a finding that plaintiff defrauded Tubb. Defendants have stated that they are only relying on Judge Fort's oral "finding" that plaintiff was guilty of negligent misrepresentation.

 To recover on a claim of legal malpractice based on negligence, a plaintiff must prove three essential elements: (1) the employment of the defendant attorney; (2) the defendant attorney's neglect of a reasonable duty; and (3) the negligence

resulted in and was the proximate cause of loss to the plaintiff. *George v. Caton,* 93 N.M. 370, 373, 600 P.2d 822, 825 (Ct.App. 1979); *see also Sanders v. Smith,* 83 N.M. 706, 709, 496 P.2d 1102, 1105 (Ct.App.1972). As to the second element, a plaintiff must show, usually through expert testimony, that his or her attorney failed to use the skill, prudence, and diligence of an attorney of ordinary skill and capacity. *Collins ex rel. Collins v. Perrine,* 108 N.M. 714, 717, 778 P.2d 912, 915 (Ct.App.1989); *Diane, Inc.,* 102 N.M. at 552, 553, 698 P.2d at 9, 10; *Rodriguez v. Horton,* 95 N.M. 356, 359, 622 P.2d 261, 264 (Ct.App.1980). Plaintiff does not deny that a misrepresentation occurred in the sale of the dealership. Rather, the crux of plaintiff's claim is that it was defendants' malpractice in representing him that proximately caused plaintiff to be sued by Tubb, and that as a result he incurred an unfavorable judgment on the contract, attorney fees, interest, loss of profits, earnings, business opportunities, and an option on a home, as well as personal injuries, mental distress and anxiety, and tax liabilities.

The principles guiding the determination of whether summary judgment was properly granted in any case are well settled in this state. "Summary judgment is a drastic remedy to be used with great caution." *Pharmaseal Lab., Inc. v. Goffe,* 90 N.M. 753, 756, 568 P.2d 589, 592 (1977). It is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, *Paca v. K–Mart Corp.,* 108 N.M. 479, 480, 775 P.2d 245, 246 (1989); *Koenig v. Perez,* 104 N.M. 664, 665, 726 P.2d 341, 342 (1986), or when the material facts are not in dispute and the only question to be resolved is the legal effect of the facts. *Savinsky v. Bromley Group, Ltd.,* 106 N.M. 175, 176, 740 P.2d 1159, 1160 (Ct.App.1987). Thus, whether summary judgment was proper depends upon the peculiar facts of each case. *See Goodman v. Brock,* 83 N.M. 789, 793, 498 P.2d 676, 680 (1972). The party moving for summary judgment bears the burden of making a prima facie showing that no genuine issue of material fact exists. *Savinsky,* 106 N.M. at 176, 740 P.2d at 1160. Upon review, this court

looks to the whole record and takes note of any evidence that puts a material fact in issue, and it views the matters presented in the light most favorable to support the right to trial on the issues. *C & H Constr. & Paving Co. v. Citizens Bank,* 93 N.M. 150, 156, 597 P.2d 1190, 1196 (Ct.App.1979). Thus, we review all pleadings, depositions, and affidavits, and the inferences drawn therefrom, in support of the arguments of the party opposing summary judgment. *See Wisehart v. Mountain States Tel. & Tel. Co.,* 80 N.M. 251, 453 P.2d 771 (Ct.App. 1969).

■ We first address the claims for damages other than the reduction in contract price. The elements of damages other than the reduction in contract price and investment opportunities based thereon are attorney fees; interest; lost profits, earnings, and business opportunities; personal injuries, including mental distress and anxiety; tax liabilities; and a lost option on a home. Plaintiff claims that these damages resulted from defendants' deficient representation of him. Based on the record before us and defendants' partial concession, we find that defendants failed to make a prima facie showing that there are no genuine issues of material fact as to these items.

The New Mexico Supreme Court has defined a prima facie showing as "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Goodman,* 83 N.M. at 792–93, 498 P.2d at 679–80. Defendants have abandoned reliance on references to fraud in the first affidavit of Judge Fort, and therefore we do not consider such findings. However, for reasons set forth more fully in our discussion of collateral estoppel, we do not think it is appropriate to consider either of Judge Fort's affidavits in any case. Even were we to consider the second affidavit, neither it nor the other documents attached to the amended motion for summary judgment counter plaintiff's claims as to the non-reduction-in-contract-price damages with sufficient evidence to raise a presumption of fact or to establish his non-entitlement to recovery. If anything, the portion of plaintiff's depo-

sition attached to defendants' amended motion for summary judgment supports plaintiff's claims with some specificity.

We recognize that further factual development of the claims may be warranted, but sparsity in the factual development of the claims is not a reason to uphold the grant of summary judgment as to these matters. *See National Excess Ins. Co. v. Bingham,* 106 N.M. 325, 328, 742 P.2d 537, 540 (Ct.App.1987) (summary judgment should not be granted when the facts before the court are insufficiently developed to appropriately determine the legal issues). Furthermore, the affidavits of plaintiff's expert are sufficient rebuttal, if needed, to create a question of fact with regard to defendants' liability for these items of damage. The trial court's order granting summary judgment is reversed as to these claims, and this cause is remanded for further proceedings, including trial on the merits if necessary, on these or some of these matters. We couch our grant of relief in these terms because it is not clear to us that plaintiff can recover all of his requested elements of damages. We do not want to be misunderstood as holding that he can. These matters were not decided below in view of the trial court's grant of summary judgment on collateral estoppel grounds. Being a court of review, we do not express opinions on questions not decided below. *See Miller v. Smith,* 59 N.M. 235, 241, 282 P.2d 715, 719 (1955).

■ The remaining issue is whether, on the element of damages representing the reduction in contract price, Judge Gallini correctly applied the principle of collateral estoppel against plaintiff, based on the judgment in *Tubb v. Hyden,* Eddy County No. CV-86-234-F. "Collateral estoppel bars relitigation of ultimate facts or issues actually and necessarily decided in a prior suit. Under collateral estoppel, or 'issue preclusion,' the cause of action in the second suit need not be identical with the first suit." *Silva v. State,* 106 N.M. 472, 474, 745 P.2d 380, 382 (1987). In addition to the requirement that the issue have been actually and necessarily decided, fundamental fairness requires that the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the

prior proceeding. *Id.* To invoke collateral estoppel, then, the moving party must show that (1) the subject matter or causes of action in the two suits are different; (2) the ultimate fact or issue was actually litigated; (3) the ultimate fact or issue was necessarily determined; and (4) the party to be bound by collateral estoppel had a full and fair opportunity to litigate the issue in the prior suit. *Reeves v. Wimberly,* 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct.App.1988). Even when these elements are present, the trial court must consider whether countervailing equities such as lack of prior incentive for vigorous defense, inconsistencies, lack of procedural opportunities, and inconvenience of forum militate against application of the doctrine. *Id.* at 235, 755 P.2d at 79; *Silva,* 106 N.M. at 476, 745 P.2d at 384.

■ New Mexico recognizes both defensive and offensive collateral estoppel. *Id.* Defendants here seek application of defensive collateral estoppel, which may be applied to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost, regardless of whether the defendant was privy to the prior suit. *Id.; see also Edwards v. First Fed. Sav. & Loan Ass'n,* 102 N.M. 396, 404–05, 696 P.2d 484, 492–93 (Ct.App.1985). Defendants bear the burden of establishing the applicability of the doctrine by introducing sufficient evidence to support it. *See Silva,* 106 N.M. at 476, 745 P.2d at 384. Neither defensive nor offensive collateral estoppel is to be applied when the record is insufficient to determine what issues were actually and necessarily determined by prior litigation. *Id.; Howell v. Anaya,* 102 N.M. 583, 585, 698 P.2d 453, 455 (Ct.App. 1985).

Defendants do not deny their relationship with plaintiff, nor do they contend that their representation of both Tubb and plaintiff was free from conflict. They argue only that defensive collateral estoppel is appropriate with regard to the third prong of plaintiff's case, in which he must show that their negligence resulted in and was the proximate cause of his losses. *See George,* 93 N.M. at 373, 378, 600 P.2d at

825, 830. Defendants argue that plaintiff is seeking to relitigate the value of the dealership and that this issue was actually and necessarily determined in *Tubb v. Hyden* because Judge Fort determined the fair market value of the dealership to be $621,000 if the dealership's financial condition had been properly disclosed. They argue that because plaintiff received payment equal to the fair market value, plaintiff is not entitled to recover damages for Judge Fort's reduction in the price below the original contract figure. Defendants rely in part on Judge Fort's affidavits to substantiate their claim that the fair market value was decided in the first trial.

■ Plaintiff argues that such reliance is erroneous because (1) the first affidavit is contradictory to the record in *Tubb v. Hyden;* (2) the two affidavits are inconsistent with one another, thereby raising factual questions rather than resolving them; and (3) the after-the-fact affidavit of a trial judge is not admissible in a subsequent proceeding to contradict or explain the judgment entered in a prior case. *See Rodriguez v. State,* 86 N.M. 535, 537, 525 P.2d 895, 897 (Ct.App.1974) ("[w]here the testimony of a single witness conflicts on a material fact summary judgment is improper"); *see also Silva,* 106 N.M. at 476, 745 P.2d at 384 (collateral estoppel is not to be applied when the record is insufficient to determine what issues were actually and necessarily determined by prior litigation). Although plaintiff makes these arguments primarily to show that Judge Fort did not determine any fraud issues, we do not understand plaintiff's briefs to concede that the fair market value of the business was necessarily determined.

We agree with plaintiff's third rationale. We recognize that the supreme court has indicated that post-trial testimony or affidavits of trial judges may be appropriate in some instances. *See, e.g., Collins ex rel. Collins v. Tabet,* 111 N.M. 391, 405, 806 P.2d 40, 54 (1991) (recognizing policy considerations militating against calling judge as witness but indicating, under facts of case, that testimony might be appropriate to explain judge's intent and expectations in appointing defendant lawyer as guardian ad litem); *Eoff v. Forrest,* 109 N.M. 695,

700, 789 P.2d 1262, 1267 (1990) (considering probate judge's affidavit in suit for fraud); *State v. Pothier,* 104 N.M. 363, 366–67, 721 P.2d 1294, 1297–98 (1986) (when transcript of original contempt occurrence was of record, testimony of district judge before whom contempt occurred was not necessary, but "nothing prevented" defendants from calling judge as witness in later proceeding). We do not think this is such a case, however.

In *Glenn v. Aiken,* 409 Mass. 699, 569 N.E.2d 783, 786 (1991), the Supreme Judicial Court of Massachusetts reviewed the admission of a trial judge's affidavit in a legal malpractice case to explain how the judge would have ruled if the defendant attorney had objected to a certain instruction at trial. The court discussed "the inappropriateness of turning to such extra-record, subjective views and of summoning judges to testify on such matters," and cited the following authorities for the proposition that "[p]robing the mental processes of a trial judge, that are not apparent on the record of the trial proceeding, is not permissible." *Id.* (citing *Day v. Crowley,* 341 Mass. 666, 172 N.E.2d 251, 253 (1961); *Washington v. Strickland,* 693 F.2d 1243, 1263 (5th Cir.1982), *rev'd on other grounds,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Fayerweather v. Ritch,* 195 U.S. 276, 307, 25 S.Ct. 58, 68, 49 L.Ed. 193 (1904) (record ought never to be overthrown or limited by the oral testimony of a judge or juror regarding what he or she had in mind at the time of the decision); *United States v. Crouch,* 566 F.2d 1311, 1316 (5th Cir.1978); *Morrison v. Kimmelman,* 650 F.Supp. 801, 806–07 (D.N.J. 1986)). Respect for the finality of judgments makes resort to judicial affidavits particularly inappropriate when the purpose is to " 'state the secret and unexpressed reasons which actuated' " a judgment. *Day,* 172 N.E.2d at 253 (quoting 2 Abraham C. Freeman, *A Treatise of the Law of Judgments* § 771 (5th ed. 1925)). In light of these authorities, consideration of Judge Fort's affidavits was error.

■ Defendants also contend that, even apart from Judge Fort's affidavits, the rec-

ord shows that the fair market value of the dealership was litigated and decided in the first trial and therefore cannot be relitigated here. We disagree, both by consideration of the transcript of proceedings in the prior trial and by consideration of a comparison of the issues in the prior trial and the issues in this trial.

Nowhere in the portion of trial proceedings we have before us from *Tubb v. Hyden* does Judge Fort mention fair market value or use the terms "willing buyer" and "willing seller." Nor do the excerpts of testimony of the witnesses, for that matter. What is clear from Judge Fort's remarks is that he was seeking to find an equitable remedy which would take into account the fact that plaintiff had negligently failed to disclose an inaccuracy in the financial data and the Tubbs had allowed the business to deteriorate. In doing so, he recognized that the business was perhaps uniquely attractive to the Tubbs, that their unquestioning reliance on all the financial records they received was less than reasonable, that they had caused the business to decline, and that they should pay a price that the court determined to be fair, in light of the equities in the case. Judge Fort specifically talked about determining what the business was worth to *the parties,* and not simply what the calculation of its fair market value might be. The fact that Judge Fort avoided the term "fair market value" at the time of trial and when he entered the written judgment leads us to conclude that his decision was premised upon a balancing of the equities in the case, and not simply upon the fair market value of the dealership.

 Additionally, the issue litigated and determined in *Tubb v. Hyden* involved more than whether the Tubbs were entitled to a reduction in the contract price because of the inaccurate financial data they received. It is true that the measure of damages in a case of misrepresentation is the difference between the value received and the purchase price. *First Interstate Bank v. Foutz,* 107 N.M. 749, 751, 764 P.2d 1307, 1309 (1988). However, in this case, Judge Fort also made adjustments in the judgment for repossession losses, costs, expenses, and attorney fees. Even if the only issue, however, had been the reduction in contract price because of the misrepresentation, the issue presented by this case is, instead, whether defendants' malpractice proximately caused plaintiff to receive less than the contract price for the dealership, and to suffer other losses, as well. These issues are not synonymous. *Cf. Perrine,* 108 N.M. at 719, 778 P.2d at 917 ("Malpractice actions are not attempts to set aside the prior settlement, but are entirely separate actions to recover compensation for the negligent performance of duties."); *accord Bucci v. Rustin,* 227 Ill. App.3d 779, 169 Ill.Dec. 810, 813, 592 N.E.2d 297, 300 (1992) (when the plaintiff's complaint alleged that plaintiff would not have been found guilty of fraud except for the attorneys' negligent representation, the defendant attorneys could not use finding of fraud to establish that their legal representation was not proximate cause of result in case, and this issue is not whether the plaintiff was fraudulent, but whether the attorneys' negligence was proximate cause of bankruptcy court's finding); *Virsen v. Rosso, Beutel, Johnson, Rosso & Ebersold,* 356 N.W.2d 333, 335 (Minn.Ct. App.1984) (legal malpractice action is not an action to vacate or set aside settlement in underlying case, but an independent action sounding in negligence).

While the amount of the judgment in *Tubb v. Hyden* may be relevant in determining plaintiff's damages in this case, it does not necessarily represent the value of the business or the outer limit of what plaintiff might be entitled to recover for the loss of the contract price. For instance, plaintiff has averred that he would never have willingly sold the business for $621,000, even had the error in data been pointed out to him prior to execution of the contract. There was evidence to show that the Tubbs were eager to purchase the dealership, and that they had inquired about it more than once. It may be that plaintiff will be able to show that the dealership had particular value to them and that they or some other buyer would have paid something less than $920,000, but more than $621,000, notwithstanding the accounting discrepancy.

The measure of damages in a malpractice case is the amount a plaintiff would have received but for the attorneys' negligence. *Cf. Perrine*, 108 N.M. at 719, 778 P.2d at 917 (measure of damages in legal malpractice suit is amount of the judgment that could have been recovered but for the attorney's negligence in settlement of claim); *George*, 93 N.M. at 378, 600 P.2d at 830 (measure of damages in case charging the attorney's negligence in failure to timely prosecute claim is amount that would have been recovered by the client absent the attorney's negligence). Of course, the defendants in such a case are also entitled to show that the amount the plaintiff actually received was due to reasons other than their malpractice. Thus, both plaintiff and defendants in this case are entitled to have a jury determine whether plaintiff was deprived of the contract price of the dealership and suffered damages as a result of his own negligence, his attorneys' malpractice, or as a result of the combination of these two factors. *See Trujillo v. Treat*, 107 N.M. 58, 60, 752 P.2d 250, 252 (Ct.App.1988) (generally, proximate cause questions are issues of fact to be decided by the jury); *see also Scott v. Rizzo*, 96 N.M. 682, 687, 634 P.2d 1234, 1239 (1981) (adopting the doctrine of comparative negligence in New Mexico).

For the foregoing reasons, the order granting summary judgment and dismissing plaintiff's complaint is reversed, and this cause is remanded for trial on the merits as to all issues.

IT IS SO ORDERED.

CHAVEZ, J., concurs.

HARTZ, J., specially concurs.

HARTZ, Judge (specially concurring).

I concur in the reversal of the summary judgment. I regret that I cannot join in the able opinion of Judge Pickard. I have no particular quarrel with the legal analysis in the opinion and fully agree with the discussion of the inappropriateness of the judicial affidavits in this case. Nevertheless, the parties' briefs on appeal have made concessions on the principal matters discussed in the opinion. We should honor those concessions.

First, as I read Plaintiff's briefs, he does not contest that the value of the business was actually and necessarily determined in the first trial. He contends, rather, that in the first trial the value issue was not "actually litigated" and he did not have a "full and fair opportunity" to litigate the issue.

Plaintiff's argument that the value issue was not "actually litigated" focuses on the dearth of evidence on the matter presented at the first trial. But how active the parties were in presenting evidence is not the test of whether a matter was "actually litigated." As stated in Restatement (Second) of Judgments Section 27 cmt. d (1980): "When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section." By that test Plaintiff's contention fails. Although the parties may have concentrated their efforts on whether rescission was proper, the pleadings ask for damages for misrepresentation, one element of which is the difference between the contract price and the fair market value. This is not a matter that was stipulated to by the parties or conceded by one of the parties. *See id.* cmt. e.

I am persuaded, however, by Plaintiff's other argument. Plaintiff raises an appropriate ground for denying collateral estoppel in the discussion of his claim that he was denied a "full and fair opportunity" to litigate the value issue in the first trial. His deposition testimony indicates that it was through the fault of Defendants that he failed to put on expert testimony regarding the value of the business. If Defendants were responsible for a substandard presentation of Plaintiff's case with respect to value at the first trial, Plaintiff should not be collaterally estopped in this malpractice action against Defendants by a finding on the value issue at the first trial. Collateral estoppel should not be a weapon to protect one against his or her own wrongdoing. *See id.* § 29(8) (collateral estoppel should not be permitted when "compelling circumstances make it appropriate" to permit relitigation); *Bucci v. Rustin*, 227 Ill.App.3d 779, 169 Ill.Dec. 810, 592 N.E.2d 297 (1992). Although there may be

doubt whether (1) conduct by Defendants could have caused the attorney who represented Plaintiff in the first trial to fail to put on expert testimony regarding value or (2) competent counsel would necessarily have called an expert witness on value, Defendants' brief does not claim the absence of a factual dispute on these matters. Thus, summary judgment was inappropriate with respect to collateral estoppel.

Because Defendants offer no ground in support of any portion of the summary judgment other than the collateral-estoppel ground, there is no need for this court to determine whether there is an independent ground supporting any portion of the summary judgment. Therefore, I concur in reversal of the entire summary judgment.